JENSEN v. HAMBURG—AMERICAN PACKET CO.

(Supreme Court, Appellate Division, Second Department. December 28, 1897.)

1. APPEAL—OBJECTION TO INSTRUCTIONS.
   The mere failure of the trial judge to duly qualify and restrict a general proposition of law contained in his charge to the jury cannot be urged as ground for reversal under a general exception to the entire proposition.

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
   A motion for a new trial, on the ground of newly-discovered evidence, should be granted where the new evidence in question, if true, would make it clear that the personal injuries for which the plaintiff recovered

damages were not nearly so serious as represented by evidence on his behalf at the trial, and where the injuries in question were such that the defendant could not well be supposed able to have made them the subject of inquiry, by independent affirmative evidence, at the trial.

Appeal from trial term, Queens county.

Action by Julius Jensen against the Hamburg-American Packet Company. From a judgment entered on a verdict, and from an order denying a motion for a new trial, on the ground of newly-discovered evidence, and for the asserted reason that there was a fictitious display at the trial of plaintiff's alleged infirmities, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BRADLEY, BARTLETT, and HATCH, JJ.

Julius J. Frank, for appellant.
Samuel Fleischman, for respondent.

BRADLEY, J. The plaintiff was a steerage passenger on the defendant's steamship Fuerst Bismarck, leaving New York April 11, 1895, on the passage from there to Hamburg. The sea began to be rough on the 13th, and on the 14th of April there was a storm and heavy sea. The ship rolled and took water on the deck, so much so that the iron doors on the weather side, which was the port side, were closed, and the hatches were closed. The passengers were thus shut off from going from that side onto the deck. The steerage passengers were in the compartments in the aft part of the vessel. The plaintiff's evidence is that, soon after 6 o'clock in the evening of that day, he went onto the upper deck; thence to the water-closet, in the bow of the ship; and, as he was proceeding on his return, a sea came in back of him, lifted him up, and knocked him down, carried him to the stern, knocking him from one side to the other, until he caught hold of something to which he held until assistance came. He was bruised about the face, his left hip was dislocated, and his knee of that leg was contused. It is alleged that this injury was occasioned by the negligent fault of the defendant; and this is founded on the charge that the plaintiff was compelled to encounter the peril he did to get to a water-closet, which danger the defendant could have obviated by permitting his access to a closet without going on the deck. There were two water-closets, one for male and one for female steerage passengers, in a poop house on the stern of the upper deck. While some of the compartments were so situated that passengers could go from them into the poop house without going onto the open deck, the evidence tends to prove that they could not do so from the compartment in which the plaintiff was located, but that they had to go onto the deck, and from there enter the poop house. The reason given by the plaintiff for not going into the water-closet there was that the sea was running over the stern, and he proceeded to the bow.

It appears that in structure and situation, and in the means there for the convenience of passengers, the upper deck was such as those decks usually are on large steamships. It was provided with hand

rails and lines, at the time in question, for passengers to cling to and steady themselves there when the sea was rough. The plaintiff says that, in proceeeding to return from the bow, he had hold of the iron rail which ran along the cabins. This had breaks or openings at the doorways. While it is not entirely clear about just where he was when struck by the water, his impression, as expressed by his evidence, is that he was then at one of those openings of the rail. They are said to have been three feet in width. It is reasonable to suppose that waves coming over the deck of a moving vessel would break against the cabins, and go off aft. As before suggested, the negligence charged was in not permitting the plaintiff to go under cover to a water-closet. This it was within the power of the de-fendant to do, and upon the imputation that such permission was denied to the plaintiff rests the only fact upon which the charge can be predicated.

It seems that the passages under cover leading from these doors were through the second cabin, and were not intended for use by the steerage passengers; but in case of storm and high sea, when it would be deemed dangerous to go onto the upper deck, it was in-tended that those covered ways to water-closets should be available to them. The doors opening into them were designated as emer-gency doors. They were not opened to the steerage passengers on the·day in question, and the conclusion was permitted from the evi-dence that the defendant, through its employé or servant assuming to have authority in that respect, refused to permit that class of pas-sengers to pass through those doors, and that there was no oppor-tunity for the plaintiff to reach a water-closet without going onto the upper deck. It is somewhat indicated by the evidence bearing upon the subject that it was not usual to open those emergency doors to the steerage compartments until the passengers were, by reason of the conditions arising from storm or other cause, shut off from the deck by closing up both sides. While it does not appear that the sea came onto the deck from the lee side, the question whether or not a reasonable regard for the safety of the passengers situated as was the plaintiff required that they should have had access through those doors, or either of them, to a water-closet, was, upon the evi-dence, one of fact; and consequently whether the necessity arising from the denial of such access for assuming the hazard which he did by going upon and along the deck at the time in question was attributable to the negligence of the defendant was also for the jury. This did not relieve the plaintiff from the burden of proving his freedom from contributory negligence by using reasonable care to avail himself of the opportunity and facilities he had, and the means provided upon the deck, for his safety and protection in the accom-plishment of the purpose for which he went upon it. This involved the inquiry whether he was justified in going to the bow, instead of availing himself of the poop house, not far from the place of his entrance onto the deck; and whether he, with reasonable care, sought and made use of the precautionary means provided there by lines and hand rails for the protection of passengers who had occa-

sion to go upon and along the deck, were questions requiring the consideration of the jury. And while, in view of the evidence, it is not entirely clear that the hazard assumed by the plaintiff was not one of the perils of the sea incident to the situation and to his relation of passenger, we think there was sufficient in the evidence to permit the conclusion that the accident resulting in the injury of the plaintiff was attributable solely to the negligence of the defendant, and therefore there was no error in the denial of the motion to dismiss the complaint.

The court charged the jury that "it was the duty of the defendant to use the highest degree of care and skill, according to the nature of its business, in the providing of safe and suitable means of transportation and accommodation for its passengers, including steerage passengers, and in guarding against all injury to them from whatever cause it might naturally, and according to the usual course of things, have been expected to occur." Exception was taken to the proposition charged "as to the requirement of the exercise of the highest degree of care and skill." This rule, requiring of common carriers of passengers the exercise of the utmost human care, vigilance, and foresight for their protection from injury, is not applicable to accidents from all causes to which they may be attributable in that relation. This exacting rule pertains to appliances and machinery, as in those respects the passengers must rely solely upon the carrier, and can have no opportunity to exercise any judgment or discretion to avoid consequences which may result from defective conditions in the machinery and mechanical appliances. Palmer v. Pennsylvania Co., 111 N. Y. 488, 18 N. E. 859; Kelly v. Railway Co., 112 N. Y. 443, 20 N. E. 383. And the rule requiring the exercise of this high degree of care is applicable also to the operation of vehicles and the navigation of vessels by common carriers of passengers. Bowen v. Railroad Co., 18 N. Y. 408; Brown v. Railroad Co., 34 N. Y. 404; Caldwell v. Steamboat Co., 47 N. Y. 282. It may, for the purpose of the question, be assumed that the cause of the accident which resulted in the injury to the plaintiff did not come within that rule, and that, as to it, the defendant could be chargeable for want of ordinary care only. But the question was not fairly presented by the exception, which was too broad for the purpose. It related to the entire proposition, as stated by the court, which was a general one applicable to carriers of passengers. There was no request to so restrict the application of the rule as to exclude the view taken of the cause of the calamity from its operation, or for instruction to the jury upon the question. It is very likely that, if the attention of the court had been distinctly called to it by any such request, there would have been no occasion to find fault with the charge upon that subject in its application to the case as presented by the evidence.

There was no error to the prejudice of the defendant in any of the rulings at the trial. A very important question for the consideration of the jury had relation to damages. The amount to be awarded could legitimately be compensatory only, and this is dependent solely

upon the nature, effect, and consequences of the injuries sustained by the plaintiff. While the sum of $15,000 given by the verdict was large, the question whether or not it was excessive upon the evidence is not, in the view taken, considered. As represented by the evidence of the plaintiff, the extent of his disability and infirmities resulting from the injury was grave, and related not only to his limb, but included the serious impairment of his hearing and memory, so much so as to substantially disable him from attending to his business. The consequences of these injuries are specifically described by him, and the evidence on his part tends to prove that they are permanent in character. It is somewhat apparent from the nature of these effects which the plaintiff's evidence tended to prove existed that the defendant may not have been able to furnish at the trial any evidence essentially bearing upon the plaintiff's condition, or to controvert the evidence on the part of the plaintiff in those respects. It seems that there was some suspicion on the part of the defendant that the plaintiff's injuries were magnified by his evidence, and for that reason the defendant caused observations to be taken of the actions and conduct of the plaintiff, also of his ability to attend to his business, and the condition of his memory and hearing capacity. Those observations and the investigations instituted in behalf of the defendant resulted in affidavits of a state of facts relating to the plaintiff's ability for physical activity and service, and relating to his hearing and memory, quite inconsistent, in degree at least, with the situation in those respects as represented by the evidence on the part of the plaintiff at the trial. And, if those affidavits truthfully and correctly state the occurrences which they purport to represent, it is evident that the consequences of the plaintiff's injuries were not as serious, by a large percentage, as they were represented to be by the evidence in his behalf at the trial, and which led to the large amount of damages awarded by the verdict. Upon those affidavits, in connection with the case, the motion was made for a new trial, on the ground of newly-discovered evidence. Those affiants were not only criticised in view of the methods adopted by them to qualify themselves to become such, but opposing affidavits were read upon the motion, reaffirming the facts as they were given by the witnesses on the trial. This newly-discovered evidence which the defendant seeks to have an opportunity to introduce is not cumulative in such sense as to prejudice the defendant's application for a new trial, as the nature and extent of the afflictions to which the plaintiff's evidence tended to prove he was subjected were such that the defendant could not well be supposed to have been able to make them the subject of inquiry by independent, affirmative evidence at the trial.

Without further stating the reasons for the result, we think the defendant has, in view of all the circumstances, made a case for a new trial, on the ground of newly-discovered evidence; and therefore the order denying the motion made for a new trial on that ground should be reversed, and a new trial granted, on payment of the plaintiff's costs. All concur.