SIEGFRIED FROHLICH, Doing Business under the Firm Name and Style of FROHLICH & COMPANY, Appellant, *v.* AARON ZELTZER, Respondent.

First Department, December 6, 1918.

**New trial — newly-discovered evidence — perjury of defendant at trial — rules relating to granting of new trial.**

Motion to vacate a judgment and for a new trial on the ground of newly-discovered evidence. The plaintiff, a stockbroker, sues to recover a balance due from a customer who, as a defense, alleged the conversion by the plaintiff of certain securities and recovered judgment on said counterclaim. The moving papers show, among other things, that the defendant at trial committed perjury for which he has since been indicted, etc. *Held*, that a new trial should be granted in the interests of justice.

In order to obtain a new trial on the ground of newly-discovered evidence, it must ordinarily be shown that the evidence was not and could not have been discovered in the exercise of reasonable diligence before the trial, that it is material and not merely cumulative or of an impeaching character in the sense of affecting credibility only as distinguished from having probative force by showing a different state of facts, and that on a new trial it would probably change the result.

However, only ordinary diligence with respect to discovering the evidence before the trial is required and the court possesses inherent power to grant such a motion where the ends of justice require it, even though a technical compliance with said requirements be not shown.

The probative force of newly-discovered evidence is only considered in determining whether it is probable that the result will be different on a new trial.

Where the action is at law, and the record does not disclose the amounts allowed by the court on each of the defendant's counterclaims, there should be a new trial of all the issues.

APPEAL by the plaintiff, Siegfried Frohlich, from an order and determination of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of May, 1918, affirming an order of the Municipal Court of the City New York denying plaintiff's motion to vacate a judgment and for a new trial on the ground of newly-discovered evidence, with notice of an intention to bring up for review the judgment sought to be vacated and the order of the Appellate Term affirming it.

*A. S. Gilbert* of counsel [*Francis Gilbert* and *Frederick Zorn* with him on the brief; *Joseph Kahn*, attorney], for the appellant.

*Arthur Hutter*, for the respondent.

LAUGHLIN, J.:

The plaintiff also appealed from the judgment, and the Appellate Term affirmed the judgment and order on the same day. So far as appears no application was made to the Appellate Term for leave to appeal from its determination affirming the judgment, and no application was made to a justice of this court for such leave. In the notice of appeal to this court from the order, however, the plaintiff gave notice that he intended to bring up for review the judgment and the determination of the Appellate Term affirming it.

No question has been presented on the appeal relating to the effect of this attempt to review the judgment, and we, therefore, express no opinion with respect thereto.

The plaintiff was a stockbroker doing business under the name of Frohlich & Co., and the defendant was one of his customers. On the 10th of September, 1917, the plaintiff closed out the defendant's account by selling the securities he was carrying for the defendant. That left a balance of $362.71 owing by the defendant to the plaintiff and this action was brought to recover it. The amended answer joins issue on the material allegations of the amended complaint and contains three counterclaims: (1) For $350 for the conversion of 1,500 Russian ruble bonds; (2) for $200 for the conversion of interest coupons on the bonds; and (3) for $260 damages for breach of the brokerage contract, alleged to consist in the plaintiff's failure to close the account out on the 29th of August, 1917, instead of on the 10th of September, 1917. The trial was before the court on the 28th of December, 1917, and resulted in a judgment on January 11, 1918, dismissing the complaint and in favor of the defendant for $580.30 " on his counterclaims," together with costs and disbursements. The record contains the evidence given on the trial of the action. On the issue arising on the amended complaint the plaintiff and defendant testified and certain letters were introduced in evidence. The plaintiff testified that on the 6th of September, 1917, a letter was written to the defendant calling for the payment of $400 on or before ten A. M. on September tenth to further margin the account, and notifying him that in the event of his failure to comply therewith the plaintiff would at that time sell for the defendant's account, at the market, 13,000 Russian ruble bonds, that being the number plaintiff was carrying for defendant at the time; that the money was not paid and the bonds were sold accordingly, leaving the balance owing by the defendant for which the action was brought; that notice of the sale was given and demand of payment was made; that a few days before writing the letter of September sixth notice had also been given to the defendant by message by telephone to one Zorn, who had introduced the defendant to the plaintiff and who resided and had a place of business near that of the

defendant, to remit $400 on account and that Zorn reported that the defendant had promised to remit the money. The defendant testified that he received a letter from the plaintiff under date of August twenty-ninth, which was introduced in evidence, stating that his account was short and asking for a remittance; that he requested Zorn to telephone plaintiff to wait until the morning of the thirty-first, and that unless one Biber brought the money to the plaintiff by that time, to sell the securities and remit for the balance, and duly mailed a letter to plaintiff to that effect on the 30th of August, 1917, copy of which was received in evidence. On the issues arising on the counterclaims, the plaintiff, whom the defendant made his witness, testified that the 1,500 bonds, with the conversion of which he is charged, were delivered to the defendant at the plaintiff's place of business on the 11th of July, 1917, by one of his employees, with a request to return receipt therefor, which the defendant failed to do, and that the interest coupons, with the conversion of which plaintiff is also charged, were sent to the defendant by registered mail. The defendant denied the delivery of the bonds to him and the receipt of the interest coupons, but he admitted that he was at plaintiff's office on the eleventh of July, and then made a payment of $350 in order to obtain the bonds, but was informed that there was a mistake in the plaintiff's books which would be rectified later; that said Biber was his partner in the bond speculation and that the interest due on the coupons on July eleventh was about $90. The defendant impliedly admitted receiving the plaintiff's letter of September sixth by answering in the negative a question as to whether he went to the plaintiff's office after receiving it. A real estate broker called by the defendant testified to having written the letter of August thirtieth for the defendant, and having made the copy which was received in evidence, but evidently he did not see it mailed. Plaintiff's margin clerk testified that he delivered the 1,500 bonds to the defendant on the eleventh of July, with receipt attached for him to sign, but was called to the telephone and defendant departed without leaving the receipt; that it had been customary in similar instances to take receipts; that the defendant asked for the coupons for interest on 15,500 of the bonds, and that

as it was inconvenient to obtain them at that time, it was agreed that the witness would send them by registered mail; that he directed that they be so sent, but does not say on what date, with a letter, a copy of which was read in evidence, requesting defendant to sign and return the inclosed receipt therefor, but that the defendant failed to return the receipt and, in effect, that the omission to obtain the receipts for the bonds and coupons was overlooked. The employee who was directed by the plaintiff's chief margin clerk to send the interest coupons to defendant was not called as a witness, and there was no further evidence with respect to the sending of the letter and interest coupons, and the plaintiff did not again take the stand or deny the receipt of the letter of August thirtieth claimed to have been written by the defendant. It thus appears that the issues arising both on the complaint and the first counterclaim depended on whether the testimony of the plaintiff or defendant was to be believed.

The affidavits presented by the plaintiff on the motion to set aside the judgment and for a new trial on the ground of newly-discovered evidence tend to show that on the 21st of January, 1918, which was ten days after the trial and entry of judgment, the plaintiff discovered unimpeachable evidence that the defendant received both the bonds and coupons as claimed by the plaintiff, and committed perjury in testifying that he had not received them; that plaintiff thereupon caused complaint to be made to the district attorney and witnesses were subpœnaed and examined before the grand jury on the 23d of January, 1918, and an indictment for perjury on account of the testimony given on the trial was presented against the defendant, on which a bench warrant was issued on that day; that the day before the indictment was found the defendant withdrew his funds from the bank with the exception of five dollars and that on the day it was found he removed from his former residence and has since been a fugitive from justice, and that the defendant's attorney, on the application of a sergeant of police, who had the bench warrant for the defendant's arrest, denied knowledge of his whereabouts. The evidence tending to show the commission of perjury by the defendant and that he did receive the bonds and interest coupons consists of an affidavit made by said

Biber, who therein states that on said eleventh of July the defendant stated to him that he had received the bonds from the plaintiff and exhibited them to him, and that one was of the denomination of 1,000 rubles, and five others were for 100 rubles each; that the 1,000-ruble bond bore the serial number 298855, and was delivered by defendant to the affiant, who clipped a coupon bearing the same serial number therefrom and deposited it with the State Bank as collateral security for a loan; that on the twenty-second of September thereafter he delivered the bond to the State Bank and had it exchanged for ten 100-ruble bonds; that he was aware of the pendency of this action, and that the defendant requested him to testify on the trial thereof; that the defendant informed the affiant that on or about the seventeenth of August he had received from the plaintiff certain interest coupons and exhibited them to him, and thereafter requested affiant to testify on the trial hereof that he was present when the letter was received and that it contained no coupons; that he did not communicate this information to the plaintiff or his attorney for the reason that the defendant had informed him that the plaintiff intended to recover a deficiency judgment for some $300 against the affiant and, in effect, that he was a silent partner of the defendant's but not aware of the precise action taken by the defendant with respect to the account and deemed it best for him to keep out of the case, and that he accordingly avoided the plaintiff and the latter's attorney; that on the 21st of January, 1918, he was informed by said Zorn that the plaintiff's attorney was very anxious to see him and he thereupon called on the plaintiff's attorney and stated to him these facts; that he will testify to these facts if a new trial be granted, and that he had testified thereto before the grand jury. No evidence was offered on the trial with respect to the serial numbers of the bonds, but the plaintiff's affidavits show that after the counterclaims were interposed, which was shortly before the trial, he made all reasonable efforts to trace the bonds, the serial numbers of which he had, and which with respect to the 1,000-ruble bond corresponded with Biber's affidavit, but that he encountered difficulty owing to the fact that such bonds were dealt in extensively and were transferable by delivery, and that many

exchanges kept no record thereof; that prior to the trial Biber had called at his office on one occasion on an errand for defendant and that he suspected that Biber might have some material knowledge with respect to the issues, and endeavored to locate him, but without avail; that he did not learn until the defendant testified on the trial that Biber was interested in these transactions. The affidavit of the plaintiff's attorney was also presented showing efforts on his part to trace the bonds before the trial by calling on the principal brokers who dealt therein and efforts after the trial to locate Biber, and diligence on his part in making the motion after discovering the facts and showing the ability of the plaintiff now to trace the bonds, and particularly the 1,000-ruble bond, which it appears was transferred by the State Bank to the brokerage firm of Schuman & Seligman, and by them to the National City Company, and to show the delivery of the interest coupon from said bond by Biber to the State Bank as claimed by him, which coupon was subsequently taken from the bank by the district attorney. The affidavit of the plaintiff's assistant cashier and margin clerk shows from plaintiff's records the serial numbers of 1,500 ruble bonds and the affidavit of the employee of the State Bank corroborates the affidavit of Biber with respect to the delivery and exchange of the 1,000-ruble bond at that bank and the deposit of the interest coupons therefrom. No affidavit was presented by the defendant in opposition to the motion, but his attorney made an affidavit in the form of an argument to the effect that the plaintiff's alleged newly-discovered evidence is newly-invented evidence, and questioning plaintiff's good faith and the truthfulness of the affidavits presented in his behalf.

We are of opinion that the trial court applied with too great strictness the ordinary rules governing motions for new trials on newly-discovered evidence. To the end that there may be finality to the judgments entered after trials it has become necessary for the courts to formulate and apply certain rules prescribing what must be shown to entitle a party to a new trial on the ground of newly-discovered evidence. The effect of those decisions is that ordinarily it must appear that the evidence was not and could not have been discovered in the exercise of reasonable diligence before

First Department, December, 1918.          [Vol. 185.

the trial, that it is material and not *merely* cumulative or of an impeaching character in the sense of affecting credibility only as distinguished from having probative force by showing a different state of facts and that on a new trial it would probably change the result (*Bonynge* v. *Waterbury,* 12 Hun, 534; *Thompson* v. *Welde,* 27 App. Div. 186; *Keister* v. *Rankin,* 34 id. 288; *Hess* v. *Sloane,* 47 id. 585; *Klinger* v. *Markowitz,* 54 id. 299); but *ordinary* diligence with respect to discovering the evidence before the trial only is required and the court possesses inherent power to grant such a motion where the ends of justice require it even though a technical compliance with these requirements be not shown (*Keister* v. *Rankin, supra; Klinger* v. *Markowitz, supra; Henson* v. *Lehigh Valley R. Co.,* 117 N. Y. Supp. 119; affd., 134 App. Div. 955; *Stokes* v. *Stokes,* 34 id. 423; *Bonynge* v. *Waterbury, supra; Hess* v. *Sloane, supra; Nugent* v. *Metropolitan Street R. Co.,* 46 App. Div. 105; *Prinzi* v. *Cataldo,* 110 N. Y. Supp. 1054), and the probative force of the newly-discovered evidence is only considered in determining whether it is probable that the result would be different on a new trial. (*Rosenthal* v. *Bell Realty Co.,* 53 Misc. Rep. 265; *McCreery Realty Corp.* v. *Equitable Nat. Bank,* 54 id. 508; *Laird* v. *Ahl,* 140 App. Div. 659; *Phelps* v. *Delmore,* 4 Misc. Rep. 508.) In the case at bar we are of opinion that the plaintiff has shown a substantial compliance with these requirements, but if he had not the case is one in which the interests of justice require a new trial. The newly-discovered evidence is material, and, while cumulative, that alone is no objection, and, although impeaching in its nature, it has probative force in that it shows a state of facts diametrically opposed to the testimony of the defendant on which the judgment was entered. Counsel for the respondent argues that in no event should the entire judgment be vacated and he figures out a theory, not disclosed by the record, with respect to the amount allowed by the trial court on each counterclaim, and contends that a new trial, if granted, should be confined to the issue arising on the first counterclaim. Inasmuch as the record does not disclose the amount allowed by the court on each counterclaim there must of necessity be a new trial with respect to all the counterclaims. That, however, would not necessarily require a new trial with

respect to the issues arising on the complaint which are only affected by the newly-discovered evidence in so far as it tends to impeach the testimony of the defendant which was accepted by the trial court and on which the complaint was dismissed. But this is an action at law and no statute has been drawn to our attention which would warrant the court in severing it and allowing two judgments to be entered; and regardless of that point, if the newly-discovered evidence be true, it tends strongly to show that the testimony of the defendant is not worthy of credence and renders it highly probable that the judgment in so far as it dismisses the complaint is also erroneous. We are, therefore, of opinion that there should be a new trial on all the issues.

It follows that the determination of the Appellate Term should be reversed, with ten dollars costs and disbursements of this appeal and ten dollars costs and disbursements in the Appellate Term, and the order of the Municipal Court denying the motion for a new trial and to set aside the judgment reversed and the motion for a new trial granted, with ten dollars costs to the plaintiff.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concurred.

Determination reversed, with ten dollars costs and disbursements in this court and in the Appellate Term, and order of Municipal Court reversed and a new trial ordered, with ten dollars costs to the plaintiff.