## Edward Bringhurst *vs.* Mary C. Harkins.

1. Assault and Battery—Instruction That Mere Words Could Not Justify Assault and Battery Warranted by Defendant's Evidence.

In action for assault and battery, defendant's evidence that plaintiff used loud and angry language in his sister's room before he ejected her therefrom justified a charge that mere words, however insulting or offensive, could not justify assault and battery, nor would loud and angry talking.

2. Assault and Battery—Instruction to Consider Defendant's Anger and Indignation in Mitigation of Damages Warranted by Evidence.

In action for assault and battery, where defendant stated that plaintiff had used loud and angry language in his sister's room,thereby provoking him to eject her therefrom, a charge that, if the assault and battery was committed under immediate influence of passionate anger and indignation reasonably provoked by plaintiff's angry language, to consider such as ground for mitigation or reduction of damages, was warranted.

3. Appeal and Error—Giving Instruction Not Changing Verdict Not Reversible Error Though Unwarranted by Evidence.

In assault and battery action, even though charge that words, however insulting, cannot justify an assault and battery, and, if defendant made assault while under influence of anger and indignation provoked by plaintiff's angry language, then to consider such words in mitigation of damages, should not have been given, where the jury were not misled as to real issues, there was no reversible error.

4. New Trial—May be Granted for After-discovered Testimony.

A new trial may be granted because of after-discovered testimony.

5. New Trial—Granting New Trial Rests in Legal Discretion of Trial Court.

The granting of a new trial rests in the legal discretion of the trial court, and will not usually be granted because testimony is conflicting, even if preponderance be in favor of the party applying therefor.

6. NEW TRIAL—NOT GRANTED FOR AFTER-DISCOVERED TESTIMONY IF WITH ITS ADMISSION THERE WOULD STILL BE CONFLICT.

A new trial will not ordinarily be granted for after-discovered testimony even though it is important and material if with its admission there would still be a conflict, unless the trial court has very good reason to believe the verdict would be different because of the new testimony.

7. NEW TRIAL—EXCEPTION LIES TO REFUSAL TO GRANT NEW TRIAL IF THERE WAS "ABUSE OF DISCRETION."

While the granting of new trial is within the trial court's discretion and is not reversible, if such discretion is exercised, an exception will lie to the court's refusal if there was abuse of its discretion, which means a failure to exercise a sound and reasonable legal discretion.

8. NEW TRIAL—AFTER-DISCOVERED TESTIMONY ONLY CONSIDERED BY TRIAL COURT AS TO ITS MATERIALITY, IMPORTANCE, AND PROBABLE EFFECT.

In application for new trial for after-discovered testimony, the trial court passes only on the materiality, importance, and probable effect of testimony and not upon its truth.

9. APPEAL AND ERROR—"JUDICIAL DISCRETION" NOT REVERSED UNLESS EXERCISED ON GROUNDS UNTENABLE OR TO EXTENT UNREASONABLE; "ABUSE OF DISCRETION."

"Judicial discretion" means nothing else but exercising the best of the court's judgment on the occasion that calls it forth; and "abuse of discretion" is a discretion exercised to an end or purpose not justified by and clearly against reason and evidence, and exercise of discretion will not be reversed unless it appears that it was exercised on grounds or for reasons clearly untenable and unreasonable (citing *Words and Phrases, First and Second Series, "Discretion"*).

10. NEW TRIAL—REQUIREMENT OF AFTER-DISCOVERED TESTIMONY AS GROUND FOR NEW TRIAL STATED.

The requirements of after-discovered testimony as ground for new trial are that it will be such as will probably change the result if a new trial is granted, that it has been discovered since trial, or could not have been discovered before trial by exercise of due diligence, and that it is material to an issue, and not merely cumulative to other evidence, nor tending to impeach or contradict it.

11. NEW TRIAL—REFUSAL OF NEW TRIAL FOR NEWLY DISCOVERED TESTIMONY ON ISSUE OF EXTENT OF PLAINTIFF'S INJURY HELD NOT ABUSE OF DISCRETION.

Where after-discovered testimony, made ground for new trial of assault and battery action, was only to the extent of plaintiff's injury, consisted of the testimony of a single witness, which was contradicted by other witnesses, and it is not clear that had such testimony been introduced it would have produced a different result, there was no abuse of discretion in denial of new trial.

(*October* 23, 1923.)

WOLCOTT, Chancellor, PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Charles F. Curley* for defendant below, appellant.
*Robert G. Harman* for plaintiff below, respondent.

Supreme Court, June Term, 1923.

Error to Superior Court, No. 67, March Term, 1921.

The action below was for the recovery of damages for personal injuries alleged to have been caused by an assault and battery committed by the defendant on the plaintiff. A verdict was rendered in favor of the plaintiff for $6,500.

The plaintiff testified that she was employed as a cook in the house of the defendant and his sister; that on the thirty-first day of January, 1920, she had occasion to go to the bedroom of the sister to have an error in her pay check corrected; that while in the room she properly conducted herself in all respects, and was not requested to leave the room prior to the assault; that while there the defendant rushed upon her, and, taking a position back of her, drew her arms back and pressed her hands behind her back, and in this position she was, with great force, rushed or hustled from the bedroom into another adjoining dressing room, and through the dressing room into a hall, where she was violently shoved or pushed against the wall and framework of a door; that as a result of the assault she was greatly injured in the side and about the body, especially in the region where she had had an operation several years before, but from which she had fully recovered; that also by reason thereof she was severely and permanently injured mentally and physically, had suffered great and constant pain and had not since January 31, 1920, and will not hereafter, be able to perform her usual and ordinary work, or, in fact, any work at all.

The defendant denied that he committed an assault and battery upon the plaintiff, and claimed that the plaintiff, without permission and against protest, went to his sister's room, where she was confined on account of illness, and there disturbed and annoyed her by loud and angry talking; that he went to the room and requested the plaintiff to leave, and upon her refusal he placed

his hands on her arms or shoulders, and, without unnecessary force, caused her to retreat into and through the adjoining dressing room out into the hall, where he removed his hands from her arms and shoulders. He denied that he did anything that would cause or bring about plaintiff's condition as she claimed it to be. The defendant's testimony was corroborated, for the most part, by several other witnesses who were present at the time of the alleged assault.

Several physicians and one surgeon testified that the plaintiff was seriously and permanently injured, and would not again be able to do any kind of work requiring her bending over, and the same witnesses, together with a number of others, testified that since the alleged assault she walked with a decided limp, and moved about with apparent difficulty. At the trial the plaintiff walked to and from the witness stand with a decided limp, and the movement of her lower limbs seemed to be somewhat impaired and attended with much labored effort.

The defendant below, appellant, moved for a new trial on the ground of after discovered evidence. This motion was denied.

. The affidavit of Jennie R. Whitaker, filed in support of defendant's motion for a new trial, was in substance as follows:

She was well acquainted with the plaintiff, who was at one time employed in her house; that in June, 1921, and again about a week later, the plaintiff communicated with her over the phone and requested that she give her work of any kind because she needed money; that twice in the morning of December 9, 1922 (three days before the trial), she met the plaintiff on the street walking in a normal manner with no trace or suggestion of lameness; that at least on six occasions between June, 1921, and December 9, 1922, she met the plaintiff in Madison Street Market, and on all said occasions she was walking in a normal, and not a labored manner, and without the slightest trace or exhibition of lameness; that she had no knowledge of the trial until after it was concluded.

The plaintiff in her counter affidavit admitted that she personally knew Jennie R. Whitaker, and was employed in her home for several months in 1910, but denied the truthfulness of all other statements contained in her affidavit, and swore that she was not in the city on December 9th, at the time Mrs. Whitaker, in her affidavit, claimed that she saw her.

PENNEWILL, C. J., delivering the opinion of the Court:

The only assignment of error that need be considered at length, and the only one, we think, the appellant seriously relies upon, is the one that is based upon the refusal of the court below to grant a new trial.

The other assignments raise three questions, all of which may be briefly answered.

1. That the court charged the jury it was the duty of the plaintiff below to seasonably leave the room when ordered by the defendant. The defendant contends that it was the duty of the plaintiff to leave the room immediately, and that the word "seasonably" was misleading and confusing to the jury. It is argued that the jury may very well have thought the defendant was guilty of an assault on the plaintiff because he pushed or forced her from the room immediately after she was ordered to leave when she had a right to remain until it was seasonable to leave.

It is impossible to tell just what the word "seasonably" meant, or how it was understood by the jury, if it was considered at all. The court probably meant, as soon as the plaintiff could leave, under the circumstances which would have been a correct statement of the law. But whatever it may have meant to the jury in respect to when the plaintiff should have left the room, it is inconceivable that the word influenced the jury in any way, or to any extent, in determining whether the defendant was guilty of an assault on the plaintiff. The question submitted to the jury was a very simple one, viz.: Whether, in removing the plaintiff from the room the defendant used greater force than he was legally entitled to use. It is impossible for this court to see how the fact, if it was a fact, that the defendant began to remove the plaintiff a little earlier than she was bound to leave could have had any effect on the jury in reaching their verdict. Certainly it is altogether too improbable, and too speculative, to warrant the reversal of the judgment below.

[1, 2] 2. That the court charged the jury that "mere words, however insulting or offensive, cannot justify an assault and battery;" neither will "loud and angry talking."

Opinion.

3. That the court charged, that if the jury found that the assault and battery was committed by the defendant, "under the immediate influence of passionate anger and indignation, reasonably provoked by angry language on the part of the plaintiff," they must consider such words of provocation as a ground for mitigation or reduction of any damages the plaintff may be entitled to recover.

The last two assignments will be considered together.

Both of them are predicated upon the fact that the court, in charging the jury, injected into the case issues not raised or warranted by the evidence; that the jury were thereby allowed to assume that the defendant sought to justify the assault and battery because of the offensive or loud and angry talking of the plaintiff, when his only ground of defense was his right to remove the plaintiff from the room after she had refused to go; and also that the jury were allowed to understand they might find that the assault and battery were committed "under the immediate influence of passionate anger and indignation reasonably provoked by angry language, on the part of the plaintiff," when the plaintiff's testimony was that she used no angry language.

The defendant does not deny that the instructions objected to were correct statements of the law, but insists they were wholly inapplicable to the facts and calculated to confuse and mislead the jury as to the real issues in the case.

It may be said in answer to these contentions,

1. While there is nothing in the plaintiff's testimony showing that she used loud and angry language, and that the defendant was provoked thereby at the time of making the alleged assault, there is much in the testimony on the part of the defendant to that effect, and because of that fact the court were warranted in giving to the jury the instructions complained of.

[3] 2. Even if the said instructions should not have been given, it is impossible to believe that the jury were thereby misled as to the real issues in the case, or that they were in any way prejudicial to the defendant. Being of the opinion that the verdict of the jury would have been the same if the instructions had not

been given, there was no reversible error committed even if they were unwarranted by the evidence.

We come now to the consideration of a more troublesome and serious question, and that is, the right of the court below to refuse a new trial in view of the after discovered testimony disclosed by an affidavit made by Mrs. Jennie R. Whitaker, and presented to the court below in support of the defendant's motion for a new trial.

[4] A new trial may be granted in this state because of after discovered testimony. There is no doubt that the testimony of Mrs. Whitaker, as shown by her affidavit, would have been very material at the trial, and if introduced might have reduced the amount of the verdict.

[5, 6] It is true that the granting of a new trial in this state rests in the legal discretion of the trial court, and it will not usually be granted because the testimony is conflicting, even if the preponderance be in favor of the party applying for a new trial. A new trial will not ordinarily be granted on account of after discovered testimony, even though it is important and material, if, with its admission, there would still be a conflict, unless the trial court has very good reason to believe the verdict would be different because of the new or after discovered testimony.

[7.] While the granting of a new trial is always within the legal discretion of the court, and is not reversible, if such discretion is exercised, we take it to be the law of this state, as it is generally in other jurisdictions, that an exception will lie to the court's refusal to grant a new trial if there was an abuse of its discretion, which means a failure to exercise a sound, reasonable and legal discretion.

What then constitutes abuse of discretion on the part of the trial court? It is impossible, from adjudicated cases, to lay down any general rule on the subject. The most that can be said is, that whether there has been an abuse of discretion depends upon the facts of the particular case. The trial court will not be held to have abused its discretion in a case of after discovered testimony,

unless the new testimony is so important and strong as to convince the appellate court that the verdict would probably have been different if the new testimony had been introduced at the trial.  Abuse of discretion does not, therefore, mean some wilful misconduct or improper act of the court in refusing a new trial, but a palpable mistake of judgment or a clear absence of sound discretion.  It does not imply wilful abuse or intentional wrong.

[8.]  Tested by such definition, was there an abuse of discretion by the lower court in refusing a new trial in the present case?  It may be said that it is not for the trial court to decide whether the newly discovered testimony is true or untrue, for that would be for the determination of the jury if a new trial is granted. The court passes only on the materiality, importance and probable effect of the testimony.  That is what the court undertook to do in the present case, and it is for this court to say whether in so doing there was a manifest abuse of discretion.

The term "exercise of discretion" has been variously defined by courts and text writers, but generally to the same effect.

According to Lord Mansfield it is "exercising the best of their judgment on the occasion that calls for it."

It has been said that a manifest abuse of discretion is reversible by an appellate jurisdiction, but generally courts will not reverse the discretion of a lower court when exercised in good faith.  It means a sound and deliberate judicial judgment, the right of acting officially according to what appears just and proper under the circumstances.

[9.]  Abuse of discretion is a discretion exercised to an end or purpose not justified by and clearly against reason and evidence. It is abused where a court does not exercise a discretion in the sense of being discreet, circumspect, prudent and cautious.  It is, in a legal sense, abused when the court exceeds the bounds of reason, all the circumstances before it being considered.   An exercise of discretion may be erroneous but still be legal and free from abuse. Judicial discretion will not be reversed unless it appears that it was exercised on grounds, or for reasons, clearly untenable or to an extent clearly unreasonable.  Judicial discretion does mean, and

can mean, nothing else but exercising the best of the court's judgment upon the occasion that calls it forth. *Words and Phrases*, *vol. 3, pp.* 2095, 2096, 2097, 2098, and the authorities therein referred to.

In the leading and well considered case of *Murray v. Buell*, 74 *Wis.* 14, 41 *N. W.* 1010, the court said:

"The trial court is more competent, by reason of having heard the witnesses testify and having the better means of weighing their testimony than this court can have; and therefore there should appear to have been an abuse of discretion, by being without or beyond all reason, to justify this court in reversing such an order. That rule would seem reasonable in all cases. * * This court must, of course, review such an order, because it is appealable * * *; but this, I understand, is the true rule of judging of it, conceding to [that court] superior advantage or facilities of exercising a sound legal discretion, with a strong presumption in its favor."

See, also, *Root v. Bingham*, 26 *S. D.* 118, 128 *N. W.* 132.

The courts of this state have not dealt at much length with the subject under consideration, but in *P. B. & W. R. R. Co. v. Gatta*, 4 *Boyce* 38, 85 *Atl.* 721, 47 *L. R. A.* (*N. S.*, 932, *Ann. Cas.* 1916E, 1227, the Supreme Court, while approving the general rule against reviewing as error the decision of a trial court in a matter addressed purely to its legal discretion, admitted that if an exception has been noted by the defendant or allowed by the court below, and the court was charged with an abuse of its discretion, it might take the case out of the general rule. The Delaware law, therefore, does not differ essentially from the law of many other jurisdictions.

In the Gatta Case, no exception was noted or allowed to the court's refusal to grant a new trial, and we think the case now before the court is the first one in this state taken to the Supreme Court on an exception noted and allowed by the court.

[10.] There is no doubt that the trial court, in passing upon a motion for a new trial, because of after discovered testimony, is vested with a large discretion in granting or denying it, and, therefore, such discretion involves some independence of judgment. There can be no hard and fast rule, or absolute criterion governing all such cases, for, as some courts say, the establish-

ment of such a rule would be the end of discretion. But, as a general rule, the requirements are that it be such as will probably change the result if a new trial is granted; that it has been discovered since the trial, or could not have been discovered before the trial by the exercise of due diligence; that it is material to an issue in the case; that it is not merely cumulative to the former evidence, and that it does not merely tend to impeach or contradict the former evidence. Clearly the newly discovered testimony in the present case is material to an important issue in the case; and it is not merely cumulative because the defendant introduced no testimony going directly to the extent of plaintiff's injuries. It could not have been discovered before the trial by the exercise of due diligence; and it does not merely tend to impeach or contradict the former evidence, because the evidence in question would tend to prove that plaintiff's condition, as claimed by her at the trial, was simulated, and hence would introduce a new element on the question of the extent of her injuries as the result of the alleged wrongful act.

[11.] The court below, in refusing the motion for a new trial, after reviewing the testimony of the plaintiff, said:

"Several physicians and one surgeon testified that she was permanently injured, and would not again be able to do any kind of work requiring her bending over, and the same witnesses, together with a number of others, testified that since the alleged assault she walked with a limp and moved about with apparent difficulty. * * * After considering the newly discovered testimony in connection with the evidence produced at the trial, I cannot believe that if the new evidence had been introduced at the trial a different verdict would have been returned by the jury."

Manifestly, then, the court's decision was made after a consideration of all the evidence, old and new. It was deliberately and not inadvisably made. No one doubts the intellectual honesty and carefulness of the decision.

Can it be said, in view of all the facts and circumstances, which were better known to the trial court than to this court, that the decision of the trial court was clearly unreasonable and unjustified? That, it seems to us, is the crucial test. The question is not what another judge would have done in deciding the motion,

but whether there was reasonable ground for what was done. Two judges may differ in their judgments in passing upon the same facts, and each have good reason for his conclusion. If the question was solely whether the plaintiff was injured, and even seriously and permanently injured, it would have to be conceded that a new trial might very reasonably have been refused, for the strength of plaintiff's testimony on that point, medical and otherwise, would leave no room for doubt. In view of that fact the after discovered testimony goes only to the extent of the injury. If it should be submitted to a jury and be believed, it might reduce the amount of the verdict. But can this court say, in view of the testimony given in behalf of the plaintiff, that it would probably have that effect? Are we clearly of the opinion that it would? The lower court were of the opinion that it would not. Was there not sufficient reason for such belief? In other words, might not two judges honestly and reasonably differ on that point? If they could, the legal discretion of the trial court was not abused. It is not enough for this court to know that the new testimony was material and important, which fact has been sufficient, in some cases, to control the court's decision.

Would the new testimony, the truthfulness of which is denied in whole by the plaintiff in her counter affidavit, probably be sufficient to overcome the testimony produced for the plaintiff at the trial, so as to cause a different result? Notwithstanding all the evidence for the defendant in denial of the alleged assault, the jury were evidently convinced that the plaintiff was assaulted and seriously and permanently injured thereby. Is it then probable that the after discovered testimony, if it had been introduced at the trial, would have produced a different result? We are not clearly of the opinion that it would.

The following cases cited by the defendant are claimed to be analogous to the one before the court, viz.: *Wells F. & Co. v. Gunn*, 33 *Colo.* 217, 79 *Pac.* 1029; *Colorado Springs & I. R. Co. v. Fogelsong*, 42 *Colo.* 341, 94 *Pac.* 356; *Jensen v. Hambury-Amer. Packet Co.*, 23 *App. Div.* 163, 48 *N. Y. Supp.* 630; *Corley v. N. Y. & H. R. Co.*, 12 *App. Div.* 409, 42 *N. Y. Supp.* 941; *Cole v. Fall*

*Brook Coal Co.*, 16 *N. Y. Supp.* 789[1]; *Sullivan v. Chicago, R. I. & P. Co.*, 119 *Iowa* 464, 93 *N. W.* 367.

The Colorado cases in particular are relied upon, but a brief statement of the facts will show how greatly they differ from the present case.

In the first one the plaintiff, thirty-six hours after the trial, had made a full recovery from what seemed to be complete paralysis. Three doctors and two trained nurses so testified, and their testimony was controverted only to some extent. There could be no doubt that the plaintiff misrepresented his condition at the trial.

In the second case the plaintiff testified that he had lived in Missouri all his life up to the time he moved to Colorado, and had always enjoyed good health; had never been ill; a physician had never attended him, and he had never been confined to his bed on account of illness. In support of the motion for a new trial affidavits of four physicians residing in Missouri near where the plaintiff had lived were filed. These affidavits, which were not controverted, were to the effect that the plaintiff had been treated at various times for neurasthenia in an acute form; that he had an acute attack of typhoid fever which had left him in a very serious condition, unable to perform manual labor in any way; that he was also treated for acute and chronic stomach trouble; that prior to moving to Colorado plaintiff said he was going there for his health; his doctor advised him to go; that he was treated for suppuration of the lympatic glands of the neck; that he was a pronounced neurasthenic.

In the third case the court did not deal specifically with "judicial discretion," but granted the motion for a new trial for the reason that if the affidavits correctly represented the facts the plaintiff's injuries were not so serious as they were represented to be at the trial. The usual and recognized test—probability of a different result at another trial—was not applied.

In the fourth case the motion for a new trial was granted, because the plaintiff, in going to and from the witness stand, used crutches, was assisted by his father, and held one foot bent and

off the floor, while the newly discovered evidence showed that before and immediately after the trial he walked readily, without crutches. The court said, "It was a dishonest display, and a fraud and imposition on the court." Several witnesses for the plaintiff made affidavits inconsistent with their testimony at the trial. A strong dissenting opinion was delivered.

In the fifth case the appeal was from an order granting a new trial, and the facts were much stronger in support of a new trial than in the present case. There were numerous affidavits which were not really contradicted, and the plaintiff admitted he had exaggerated his condition at the trial.

In the sixth case a medical witness for the plaintiff had been deceived as to the premises upon which he based his evidence, and admitted he was in error respecting plaintiff's condition. And there were statements and admissions of the plaintiff subsequent to the trial wholly inconsistent with his testimony on the stand. The injury complained of was degeneration of the nervous system caused by spinal concussion.

Obviously in all these cases the newly discovered testimony was much stronger than in the present case, in which the new testimony is confined to a single witness. The affidavit of this witness may be true, but it is not sufficient, in itself, to justify this court in reversing the discretion of the trial judge, especially when it is contradicted in every material part by the plaintiff, and inferentially, for the most part, by the affidavits of other witnesses.

The judgment of the lower court will be affirmed.