Peter A. Quinn, J.
This is a motion by plaintiff to vacate a judgment and for a new trial on the ground of newly discovered evidence. The original cause of action for a permanent injunction restraining defendants from picketing plaintiff’s place of business arose on October 30,1961. This action was commenced on November 6,1961. On November 30, 1961, plaintiff’s motion for a temporary injunction and defendants’ motion to dismiss the complaint were both denied. Special Term, however, thereupon ordered an immediate trial and the case was tried before this court on December 7, 8, 13 and 14, 1961. Judgment was given for defendants denying a permanent injunction.
It was found, as a fact, that defendants’ picketing was lawful in that its sole purpose Avas to publicize plaintiff’s failure, in its relations with its employees, to meet the minimum labor standards uniformly adAvjcated, exemplified and maintained by defendant, Avithout exception, in the relation of its members, as employees, Avith other employers in the same industry. Upon this finding of fact it Avas concluded that a genuine labor dispute Avithin the meaning of section 876-a of the Civil Practice Act existed between plaintiff employer and defendant union.
This finding of fact and consequent conclusion of law were based on the positive, emphatically unequivocal testimony of defendants’ Avitness that minimum precisions of the master contract draAvn by the defendant union Avere strictly adhered to in all collective bargaining agreements Avith employers throughout the industry and thus there Avere established uniform standards of pay and other Avorking conditions substantially higher and better than the arrangement betAvecn plaintiff and its employees.
There is uoav presented to the court, by plaintiff, copies of existing contracts betAveen defendant union and tAvo of the largest chain drugstores in the City of New York. These contracts supersede prior collective bargaining agreements which expired September 30, 1961. Though dated and executed early in 1962, they each have the effective date of October 1, 1961, and if not actually (though retroactively) in force, were inferentially in process of negotiation at the time of the commencement and trial of this action. Both of these contracts explicitly provide for wages and working conditions substantially inferior to those *78 obtaining under the collective bargaining agreement between plaintiff and its employees (negotiated by a rival recognized union), and, of course, below the so-called minimum standard of defendants’ so-called master contract.
Defendants’ president and area director, on the stand, positively professed intimate and precise knowledge of the terms of defendants ’ collective bargaining agreements with some 1,900 employers in the City of New York. They most emphatically swore that any less advantageous contracts, expired or expiring, upon renewal, in every instance must automatically conform to the so-called minimum standards of the so-called master contract. It balks credulity that they could have overlooked or forgotten their union’s contracts with the two largest drugstore chains in the city which were then, it is fair to infer, under their direct supervision, in the very process of negotiation. The court is impelled to the moral certainty that their crucial testimonies, upon which the whole issue turned, i.e., their unyielding insistence on the uniform provisions of the so-called master contract, by which minimum labor standards were established and maintained in the industry, were false, known by them to be false and willfully falsified for the deliberate fell purpose of hoodwinking the court; and, through this deception, making the court their tool to work a fraud upon the plaintiff and strike a guerrilla blow at a rival, recognized union. For this court of equity, with such well-bottomed suspicions of barefaced perjury, to let plaintiff go empty-handed begging redress for so flagrant a wrong, would outrage common decency.
But even measured against the narrow, rigid standards developed in what was once the strictly law-side of this court, defendants’ formalistic protests are in vain: Considering the sense of great urgency inherent in the very nature of the case and the haste with which plaintiff was compelled to move, so that little more than a month elapsed between the defendants’ acts, which gave rise to the cause of action, and the completed trial of the issue, it cannot be said that plaintiff’s failure to discover the new evidence in advance of the trial resulted from a lack of reasonable diligence; certainly, this evidence is critically material and not merely cumulative or of an impeaching character in the sense of affecting credibility only, as distinguished from having probative force by showing a different state of facts; moreover, this evidence goes so directly to the heart of the matter, it can be said emphatically and unhesitatingly that it would probably change the result. Thus, this evidence meets even the classic legal tests succinctly laid down in Frohlich v. *79 Zeltzer (185 App. Div. 103, 109) and Amalfi v. Post & McCord (250 App. Div. 408, 413-414). To paraphrase the latter case, there is ample good reason to believe that defendants, by fraud and misrepresentation, may have obtained a judgment which in justice they should not have received. The court will not hesitate to use the power it possesses to right the wrong by vacating the judgment obtained and directing a new trial.
The motion is granted and this case is set down for trial at the head of the Trial Calendar of Special Term, Part I, Bronx County, for the earliest date plaintiff chooses.