## STATE OF CONNECTICUT *v.* EDWARD D. BERGIN, JR.
### (13802)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued January 2—decision released April 24, 1990

*Harry Weller*, assistant state's attorney, with whom, on the brief, was *John J. Kelly*, chief state's attorney, for the appellant (state).

*Hubert J. Santos*, for the appellee (defendant).

CALLAHAN, J. The principal issue in this appeal is whether the trial court erred when it dismissed with prejudice the charge of bribe receiving in violation of General Statutes § 53a-148[1] that was pending against the defendant, Edward D. Bergin, Jr. Bergin was the mayor of Waterbury from January, 1976, until December 31, 1985. After his arrest on a warrant, the defendant requested an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The trial court determined, on the basis of affidavits and an oral offer of proof, that the defendant was entitled to a full *Franks* hearing. After the

[1] "[General Statutes] Sec. 53a-148. BRIBE RECEIVING: CLASS D FELONY. (a) A public servant or a person selected to be a public servant is guilty of bribe receiving if he solicits, accepts or agrees to accept from another any benefit for, because of, or as consideration for his decision, opinion, recommendation or vote.

"(b) Bribe receiving is a class D felony."

hearing, the court ruled that the defendant had proven by a preponderance of the evidence that the "affiant deliberately omitted evidence and testimony from the warrant affidavit that is material to the finding of probable cause." It then found that had the omitted facts been included in the arrest warrant affidavit, probable cause to arrest the defendant would not have existed. The court thereupon granted the defendant's motion to dismiss concluding that the affiant's omission of material information from the warrant affidavit constituted "defects inherent in the initiation of the prosecution" that, if left unremedied, threatened the "integrity of the judicial system."[2] See Practice Book § 815 (1).

The state promptly requested permission to appeal the dismissal, which request the trial court denied. Subsequently, the Appellate Court granted the state's motion for review of the trial court's denial and thereafter granted the state permission to appeal the dismissal. Pursuant to Practice Book § 4023, we transferred this appeal to ourselves. We find error.

On appeal the state claims that the trial court erred when it: (1) granted the defendant a *Franks* hearing; (2) ruled that if the omitted facts were included in the arrest warrant affidavit, there was no probable cause for the defendant's arrest; (3) limited the dates on which the state could attempt to prove the defendant received the money he allegedly obtained as a bribe and, subsequently, struck the state's information amending the date of the alleged offense; and (4) dismissed the charge against the defendant. The defendant argues that this court lacks jurisdiction. We must, therefore, address that question before we reach the merits of the state's claims.

---

[2] This case does not involve a dismissal pursuant to General Statutes § 54-56.

## I

The defendant contends that this court lacks subject matter jurisdiction over the state's appeal and therefore urges us to reverse the Appellate Court's decision granting the state permission to appeal. The defendant asserts twò bases for his claim. First, he argues that the trial court did not abuse its discretion when it denied the state permission to appeal because (1) both parties submitted briefs to the trial court addressing the issue, and (2) the trial court issued a four page memorandum of decision articulating its "considered reasons" for denying the state's motion. See *State* v. *S & R Sanitation Services, Inc.,* 202 Conn. 300, 311, 521 A.2d 1017 (1987). Second, he asserts that the state is now raising issues that were not raised in its memorandum seeking permission to appeal. We are unpersuaded.

As a general proposition General Statutes § 54-96 authorizes the state to appeal questions of law in a criminal case only if the trial court grants permission to appeal.[3] Section 54-96, however, does not preclude an appeal by the state when the "denial was so arbitrary as to constitute an extreme abuse of discretion rendering the denial ineffective. In such cases the statute's condition requiring the court's permission to appeal cannot serve to insulate a trial court from review by this court; rather, the statute as a whole remains operative to allow appeal by the state." *State* v. *Avcollie,* 174 Conn. 100, 110, 384 A.2d 315 (1977). Although we accord great deference to the trial court's discretionary rulings on these matters, that does not mean

---

[3] "[General Statutes] Sec. 54-96. APPEALS BY THE STATE FROM SUPERIOR COURT IN CRIMINAL CASES. Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

that its decision is shielded from our scrutiny. *State* v. *S & R Sanitation Services, Inc.,* supra, 312. Section 54-96 does not deprive this court of jurisdiction simply because the trial court gave "considered reasons" when it denied the state permission to appeal.

In its memorandum of decision, the court set forth its reasons for refusing to grant the state permission to appeal. Its rationale, the trial court stated, was that the state was seeking to appeal questions of fact rather than questions of law. Since the state can appeal only questions of law, the court reasoned that it could not appeal the issues raised. See General Statutes § 54-96. The issues which the trial court, in its memorandum of decision, deemed factual were: (1) whether the date of the alleged bribe is a material element of the crime charged; (2) whether the alleged omissions from the arrest warrant affidavit were material to the crime of bribe receiving; and (3) whether probable cause existed if these omissions were included in the arrest warrant affidavit.

The underlying premise of the trial court's reasoning is unsound. The issues raised by the state are not purely factual but also involve questions of law that we have frequently reviewed on appeal. Our opinions provide abundant authority that all of the issues that the trial court deemed precluded from review present questions that we can and will consider. We have held that a judgment of dismissal with prejudice is an appealable issue within the provisions of § 54-96. *State* v. *Ross,* 189 Conn. 42, 51, 454 A.2d 266 (1983); *State* v. *Audet,* 170 Conn. 337, 341, 365 A.2d 1082 (1976). We also have often reviewed a trial court's probable cause determination; *State* v. *Patterson,* 213 Conn. 708, 717, 570 A.2d 174 (1990); *State* v. *McPhail,* 213 Conn. 161, 168, 567 A.2d 812 (1989); *State* v. *Mitchell,* 204 Conn. 187, 205, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct.

293, 98 L. Ed. 2d 252 (1987); see also *State* v. *Boyd,* 214 Conn. 132, 143, 570 A.2d 1125 (1990), *(Shea, J., dissenting),* and cases cited therein; *State* v. *Middleton,* 20 Conn. App. 321, 331, 566 A.2d 1363 (1989); and determined on appeal, whether the date of an alleged offense is a material element of the crime charged. *State* v. *Evans,* 205 Conn. 528, 535, 534 A.2d 1159 (1987), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988). Furthermore, whether an alleged omission in an arrest warrant affidavit is "material" to the crime charged involves a mixed question of law and fact and is reviewable on appeal. See *United States* v. *Condo,* 782 F.2d 1502, 1506 (9th Cir. 1986); *United States* v. *Ippolito,* 774 F.2d 1482, 1484 (9th Cir. 1985).[4] In short, what the trial court labeled factual determinations are, under the governing precedents, appealable legal issues.

Those issues, moreover, are important both from a legal and public policy standpoint. Pretrial dismissal of criminal charges in any type of case is such a drastic remedy that it should not be resorted to lightly. Further, the appropriateness of the dismissal of bribery charges, a crime that involves a violation of the public's trust in our elected officials, would seem to be particularly deserving of a full review by an appellate court. We are not persuaded that the facts of this case warrant a different conclusion. Confidence in our judicial system would be severely eroded if the trial court had the authority to dismiss charges against this defendant before trial on an unsound premise, and could then

---

[4] Whether the defendant is entitled to a hearing pursuant to *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), is a mixed question of law and fact that we will review on appeal. *United States* v. *Dozier,* 844 F.2d 701, 704 (9th Cir. 1988); *State* v. *Ruscoe,* 212 Conn. 223, 231–33, 563 A.2d 267 (1989), cert. denied,     U.S.    , 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Morrill,* 205 Conn. 560, 569–72, 534 A.2d 1165 (1987).

insulate its decision from appellate review. This is especially true when the legislature has expressed its intent to prosecute such conduct; see *State* v. *Ellis,* 197 Conn. 436, 476, 497 A.2d 974 (1985); and when the issues raised by the state on appeal can be addressed without subjecting the defendant to a repeated determination of guilt or innocence. See *United States* v. *Wilson,* 420 U.S. 332, 345, 95 S. Ct. 1013, 43 L. Ed. 2d 232 (1975), overruled on other grounds, *United States* v. *Scott,* 437 U.S. 82, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978) ("[a] defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact"). These considerations should not evaporate through the erroneous classification of appealable issues as factual rather than legal. We conclude that the trial court abused its discretion in denying the state permission to appeal.[5] *State* v. *Avcollie,* supra, 111.

The defendant's second jurisdictional claim is wholly without merit. While the defendant correctly asserts that the state may appeal only those issues it has requested permission to raise; *State* v. *Castonguay,* 194 Conn. 416, 419 n.5, 481 A.2d 56 (1984); the state fully set forth all of the issues in the current appeal in its memorandum of law in support of its motion for permission to appeal. In its memorandum, the state specifically raised the issue of whether a dismissal, based in large part upon an alleged *Franks* violation, was appropriate. We conclude that we have jurisdiction to decide the issues presented in this appeal.

## II

On appeal, the state principally argues that the trial court erred when it dismissed the charge against the

[5] Since it would be a useless procedure to remand this case to the trial court with direction to grant the state permission to appeal, we will address the remaining questions on appeal at this time. *State* v. *Avcollie,* 174 Conn. 100, 111–12, 384 A.2d 315 (1977).

defendant. Before we can fully consider this argument, however, we need to address the state's subordinate claims of error. The state asserts that the underlying error in this case, which led to the eventual dismissal of the bribery charge against the defendant, occurred when the trial court granted the defendant an evidentiary hearing pursuant to *Franks* v. *Delaware,* supra, on the basis of its conclusion that time was a material element of the offense of bribe receiving. We agree.

The following facts are pertinent to this claim. The arrest warrant affidavit alleges that, during the defendant's tenure as the mayor of Waterbury, he had the ultimate authority to determine who would be granted the right to tow for the city. In 1985, Christopher Hill, while working at a family-owned business, Executive Auto Towing and Sales (Executive Auto Towing), was contacted by Thomas Gahan, an aide to the mayor. As a result of a conversation with Gahan, Christopher Hill believed that if Executive Auto Towing wished to continue to tow for the city, the Hills would be required to make a "contribution." On June 14, 1985, Thomas A. Hill, Jr., president of Executive Auto Towing, cashed a check for $3000. He placed the cash in an envelope and gave it to Gahan that day. Thomas Hill believed that the money was a donation to the Democratic Party that was required if his company wanted to tow for the city. Gahan confirmed that the defendant sent him to Executive Auto Towing sometime in June, 1985, to pick up a "donation." Gahan stated that Hill gave him the envelope and "he then turned over the envelope" to the mayor on a date not specified, and "told the Mayor, 'I picked this up from the Hills.'" The cash "contribution" never appeared on the financial records of either the Waterbury Democratic Town Committee or the Committee to Re-elect Mayor Bergin. The warrant affidavit did not allege a date when the defendant actually received the envelope.

The defendant filed a motion for a bill of particulars on April 25, 1988. In response, the state filed a bill of particulars in which it alleged that the defendant, through Gahan, had received a bribe in consideration for his decision to grant Executive Auto Towing the towing contract for the city of Waterbury. The state further alleged that "the defendant committed such crime on or about June 14, 1985." Unsatisfied with this response, the defendant sought a court ruling to limit the date of the alleged offense.[6] The state objected, arguing that the bill of particulars was sufficient and that the state was not required to be more specific about the date. Despite the state's objection, the defendant renewed his request for a specific date. On the third such occasion, the trial court ruled that "on or about June 14, 1985," meant that the defendant received the money on "June 14, 15, 16 or 17, 1985." Immediately thereafter the defendant disclosed that he had been in Anchorage, Alaska, from June 13 to June 19, 1985, and that the state knew this, but nevertheless had failed to disclose it in the arrest warrant affidavit. On the basis of this alleged omission from the arrest warrant affidavit, the trial court granted the defendant's motion for a full *Franks* hearing because it concluded that the defendant had made a "substantial preliminary showing of a material omission by the fact that the defendant was in Anchorage, Alaska from June 13, 1985 to June 19, 1985."[7] On appeal, the state challenges the trial court's ruling: (1) that the date of the offense was a material element of the charge of bribe receiving; and (2) that the defendant was therefore entitled to a hearing pursuant to *Franks* v. *Delaware*.

---

[6] On July 21, 1988, the defendant filed a written objection to the bill of particulars provided by the state. He also attempted to limit the date of the alleged offense orally before the trial court on at least three separate occasions.

[7] The defendant does not challenge the issuing judge's determination that the affidavit established probable cause to arrest the defendant.

When reviewing whether a *Franks* hearing is warranted, we recognize that there is a "longstanding rule that there is an underlying presumption of validity with respect to the affidavit supporting a warrant." *State* v. *Dolphin,* 195 Conn. 444, 457, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). In order for a defendant to challenge the truthfulness of an affidavit underlying a warrant[8] at a *Franks* hearing, he must: (1) make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit"; and (2) show that the allegedly false statement is necessary to a finding of probable cause. *Franks* v. *Delaware,* supra, 155–56. If the allegedly false statement is set aside, however, and there remains sufficient evidence to establish probable cause, a *Franks* hearing is not necessary. Id., 171–72. Although the *Franks* decision referred only to false statements in the affidavit, we have held that "material omissions from such an affidavit also fall within the rule . . . ." *State* v. *Stepney,* 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

Not all omissions, however, even if intentional, will invalidate an affidavit. *People* v. *Stewart,* 105 Ill. 2d 22, 43, 473 N.E.2d 840 (1984), cert. denied, 471 U.S. 1131, 105 S. Ct. 2666, 86 L. Ed. 2d 283 (1985). In fact, an affiant may omit facts that he believes to be either immaterial or unsubstantiated. Id. Thus, before a defendant is entitled to a *Franks* hearing for an alleged omission, he must make a substantial preliminary show-

---

[8] Although *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), refers only to search warrant affidavits, we have applied the same principles to arrest warrants. See *State* v. *Dolphin,* 195 Conn. 444, 456, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985).

ing that the information was (1) omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge, and (2) material to the determination of probable cause. *United States* v. *Reivich,* 793 F.2d 957, 961 (8th Cir. 1986); *People* v. *Stewart,* supra, 44. Even if the affiant "picks and chooses" the information that he includes in the affidavit, there is no *Franks* violation if, had the magistrate been so advised, he still would have been justified in issuing the warrant. *United States* v. *Mankani,* 738 F.2d 538, 546 (2d Cir. 1984).

We note initially that the arrest warrant affidavit did not specify the date the defendant received the envelope from Gahan. The affidavit alleges that Thomas A. Hill, Jr., "put $3,000 cash into an envelope, and gave the envelope to Thomas Gahan at Executive Auto Sales on June 14, 1985." It further alleges that Gahan "then turned over the envelope he received from the Hills to the Mayor (Edward D. Bergin) and told the Mayor, 'I picked this up from the Hills.' " The fact that the trial court ruled, six months *after* the affiant completed the affidavit, that "on or about June 14, 1985," meant that the defendant received the money from Gahan on "June 14, 15, 16 or 17, 1985," is totally irrelevant to our determination of whether, at the time the affiant completed the affidavit, he intentionally or recklessly omitted material facts.

The trial court nonetheless concluded that the defendant was entitled to a *Franks* hearing because the affiant had not mentioned the defendant's Alaska trip in the affidavit. This omission would be material to the finding of probable cause only if the date the defendant received the money from Gahan is a material element of the crime of bribe receiving. " '[W]here time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material.' *State* v. *Hauck,* 172 Conn. 140, 150, 374

A.2d 150 (1976)." *State* v. *Laracuente,* 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). A public servant can be convicted of bribe receiving if "he *solicits, accepts* or *agrees to accept* from another any benefit for, because of, or as consideration for his decision, opinion, recommendation or vote." (Emphasis added.) General Statutes § 53a-148. The clear language of the statute supports a conclusion that the date the defendant received the cash is not a material element. See *United States* v. *Tunnell,* 667 F.2d 1182, 1186 (5th Cir. 1982); *People* v. *Lyon,* 135 Cal. App. 2d 558, 577, 288 P.2d 57 (1955) ("[t]he fact that there was a delay in payment, or that payment was to be made in the future, is not necessarily material to the issues"). Indeed, the defendant might be convicted under the statute without ever having received the money. It is sufficient for the state to prove that the defendant "solicits" or "agrees to accept" any benefit in consideration for his decision.

Since the affidavit did not attempt to specify the exact date Gahan gave the money to the defendant, and the date the defendant received the money is not a material element of the crime of bribe receiving, the fact that the affiant omitted the information that the defendant had been in Alaska from June 13 to 19, 1985, is immaterial to the probable cause determination. Because the information is immaterial, it is of no moment that the affiant failed to include it in the arrest warrant affidavit. Consequently, the defendant failed to make a "substantial preliminary showing" that: (1) the affiant omitted the information that the defendant was in Alaska from the affidavit with the intent to mislead the judge who signed the warrant; or (2) the information omitted was material to the probable cause determination, and when included, would have defeated

probable cause to arrest. The trial court, therefore, was not required to grant the defendant's motion for a full evidentiary hearing pursuant to *Franks* v. *Delaware*, supra.

Although the trial court was not obligated to conduct a *Franks* hearing, we will review its findings on appeal because of their impact on the trial court's ultimate decision to dismiss the information. In its memorandum of decision dismissing the information, the trial court found that the affiant had deliberately omitted certain material facts from the arrest warrant affidavit. It opined that the affiant had intentionally failed to include, but should have included, the following information: "(1) That the defendant was in Alaska from June 13, 1985, to June 20, 1985. (2) That Gahan, in the statement he gave on January 5, 1988, when he was asked whether he had any knowledge of any of the Hills making cash contributions in order to obtain city towing between 1981 and 1985 inclusive, answered 'No.' (3) That Gahan, also in his statement of January 5, 1988, indicated that he and the defendant had prior conversations which characterized the award of towing contracts as patronage to loyal party workers or contributors and not the reverse (i.e., that the contributions were made for the purpose of obtaining a contract). (4) Gahan, in his February 17, 1985 statement, when asked whether he was aware if the defendant was receiving any envelopes, monies or contributions from the Hills in exchange for the City towing in Waterbury, answered, 'Not personally, no.' (5) None of the Hills implicate the defendant in the alleged bribe. (6) None of the Hills claim either that they met with the defendant or had contact with him in any way. (7) Several members of the Hill family indicated that they are loyal party workers; that any money paid by them was strictly campaign contributions and not

intended as an exchange for towing rights or for any other decision or consideration."[9]

On appeal we are obligated to accept the validity of the trial court's factual finding that the affiant intentionally omitted the above cited information. General Statutes § 54-96. We may, however, review whether the omissions, accepted as true, are material to probable cause.[10] *United States* v. *Dozier,* 844 F.2d 701, 705 (9th Cir. 1988); *United States* v. *Page,* 808 F.2d 723, 729 (10th Cir.), cert. denied, 482 U.S. 918, 107 S. Ct. 3195, 96 L. Ed. 2d 683 (1987).

We have examined the record and the transcripts of the testimony and conclude that the "omissions" cited by the trial court are not material and, even if they had been included in the affidavit, would not defeat probable cause. First and foremost, time is not a material element of the charge of bribe receiving. In addition, the second and fourth omissions, taken in the context in which they were made, do not alter the substance of Gahan's statements as recited in the affidavit. As to the fifth and sixth omissions, an examination of the affidavit reveals that the affiant never attempted to imply that the Hills were in contact with the defendant. The facts set forth in the affidavit properly suggest only that Gahan was acting as an agent of the defendant. As to the last omission, a defendant can properly be convicted of bribe receiving "even though the result sought by the bribe-giver was in fact lawful

---

[9] It is not clear from the trial court's memorandum of decision whether it believed that any one of these factors alone would defeat probable cause. The trial judge stated, "If the omitted *facts* are inserted in the affidavit, probable cause could not have been found." (Emphasis added.) We will assume, therefore, that the trial judge concluded that the cumulative effect of these omissions defeated probable cause.

[10] At the hearing, the defendant has the burden of proving a *Franks* violation by a preponderance of the evidence. *Franks* v. *Delaware,* 438 U.S. 154, 156, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *State* v. *Telesca,* 199 Conn. 591, 604–605, 508 A.2d 1367 (1986).

and proper . . . ." *United States* v. *Brennan,* 629 F. Sup. 283, 294 (E.D.N.Y.), aff'd, 798 F.2d 581 (2d Cir. 1986); *United States* v. *Traitz,* 871 F.2d 368, 386 (3d Cir.), cert. denied,    U.S.    , 110 S. Ct. 78, 107 L. Ed. 2d 44 (1989). As to the third omission, how the defendant and Gahan characterized the award of towing contracts is not significant. *State* v. *Foord,* 142 Conn. 285, 289, 113 A.2d 591 (1955). The underlying facts might support an inference that the defendant received a bribe regardless of whether the parties themselves characterized the payments as "political contributions." *United States* v. *Barna,* 442 F. Sup. 1232, 1236 (M.D. Pa. 1978), aff'd without opinion, 578 F.2d 1376 (3d Cir. 1978), cert. denied, 439 U.S. 862, 99 S. Ct. 184, 58 L. Ed. 2d 172 (1978). Whether the defendant received a bribe or whether the monies were collected for a lawful purpose is a question of fact that should be left to the factfinder at a trial. *Commonwealth* v. *Schwartz,* 178 Pa. Super. 434, 439, 115 A.2d 826 (1955).

In summary, there can be no *Franks* violation when the omissions, if included in the arrest warrant affidavit, would not defeat probable cause. *United States* v. *Reivich,* supra, 962; *United States* v. *Condo,* supra, 1506–1507; *United States* v. *Collins,* 549 F.2d 557, 561 (8th Cir. 1977). With these underlying issues resolved, we may now address the state's claim that the trial court erred when it dismissed the charge against the defendant.

In its memorandum of decision granting the defendant's motion to dismiss, the trial court was offended by what it characterized as the affiant's attempt to subvert the neutrality and impartiality of the issuing magistrate by providing him with "a less than complete rendition of the material facts." Because of the affiant's "intentional and deliberate omissions which bypassed the neutral and independent role of the issu-

ing judge," the trial court believed that the integrity of the judicial system was threatened. Consequently, it dismissed the information pursuant to "the inherent supervisory power of [the trial] court, and under Practice Book Section 815 (1)."

Dismissal of an information is a drastic action that is appropriate in cases where "there was a need either to eliminate prejudice to a defendant in a criminal prosecution, where it was impossible to do so by imposition of lesser sanctions, or to deter a pattern of demonstrated and longstanding widespread or continuous official misconduct." *United States* v. *Broward,* 594 F.2d 345, 351 (2d Cir.), cert. denied, 442 U.S. 941, 99 S. Ct. 2882, 61 L. Ed. 2d 310 (1979); *United States* v. *Fields,* 592 F.2d 638, 647 (2d Cir. 1978), cert. denied, 442 U.S. 917, 99 S. Ct. 2838, 61 L. Ed. 2d 284 (1979). The defendant relies upon his perception of governmental misconduct in this case to justify his position that the trial court's dismissal was correct. In contrast, the state simply contends, inter alia, that there was no governmental misconduct for the trial court to supervise.[11]

In light of our holding that (1) the *Franks* hearing was improvidently granted, and (2) that this record does not support a conclusion of a *Franks* violation, we find no basis for the trial court to have dismissed the charges against the defendant. If the omissions do not amount

---

[11] Both parties recognize that an illegal arrest that does not impair the fairness of the subsequent prosecution does not bar the prosecution or void a resulting conviction. *State* v. *Graham,* 200 Conn. 9, 21, 509 A.2d 493 (1986); *State* v. *Fleming,* 198 Conn. 255, 263, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). Furthermore, "[a] *Franks* violation in an affidavit supporting an arrest warrant does not entitle a defendant to the dismissal of the charges for which he was arrested." *State* v. *Patterson,* 213 Conn. 708, 715, 570 A.2d 174 (1990). In this case, however, the trial court did not base its dismissal of the information solely upon the perceived *Franks* violation.

to a *Franks* violation, it is hard to conceive how their omission from the affidavit can be considered such egregious conduct by the affiant as to warrant the extreme sanction of dismissal. Furthermore, there is no evidence that the defendant suffered any prejudice because of misconduct by government officials. We therefore conclude that the trial court abused its discretion and erred when it determined that the bribe receiving charge pending against the defendant be dismissed. *State* v. *Patterson,* 213 Conn. 708, 723, 570 A.2d 174 (1990); *State* v. *Mitchell,* 204 Conn. 187, 205–206, 527 A.2d 1168 (1987). The trial court's action in dismissing the charge is reversed.[12]

## III

The state's final claim concerns the appropriateness of the trial court's ruling to strike the state's amended information. Most of the facts relating to this claim have been set forth in Part II of this opinion. In addition, the following facts are relevant. On November 14, 1988, after the trial court had limited the dates on which the state could prove that the defendant received the money, the state filed an amended information and bill of particulars alleging that "the defendant committed such crime on or about the month of June, 1985, or sometime thereafter, but before January 1, 1986." The trial court struck the amended information and bill of particulars. On appeal, the state argues that the trial court erred when it (1) ruled that the state must prove

---

[12] In the alternative, the defendant asserts that this court may dismiss this case because, while the affiant was investigating the defendant's alleged illegal activities, he was also attempting to secure a job for his daughter from the defendant. While we do not condone such behavior, such allegations, even if true, would not demonstrate misbehavior so egregious as to warrant a dismissal of the information. See *United States* v. *Cole,* 807 F.2d 262 (1st Cir. 1986), cert. denied, 481 U.S. 1069, 107 S. Ct. 2461, 95 L. Ed. 2d 870 (1987) (the fact that one of the investigating officers had engaged in a romantic affair with a codefendant both before and after the indictment did not warrant dismissal of the charges).

the defendant received the proceeds of the bribe on June 14, 15, 16 or 17 exclusively, and (2) struck the state's amended information. We agree.

A criminal defendant has a constitutional right to be informed of the "nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." *State* v. *Laracuente,* supra, 518; U.S. Const., amend. VI; Conn. Const., art. I, § 8. This requirement, however, does not obligate the state to provide the defendant with a specific date of the alleged offense, when time is not a material element of the crime charged or when a precise date is unavailable. "Where the [information] alleges that an offense allegedly occurred 'on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. . . . The courts agree that when the [information] uses the 'on or about' designation, proof of a date reasonably near to the specified date is sufficient. See *United States* v. *Champion,* 813 F.2d 1154, 1168 (11th Cir. 1987); *United States* v. *Grapp,* 653 F.2d 189, 195 (5th Cir. 1981)." *United States* v. *Leibowitz,* 857 F.2d 373, 379 (7th Cir. 1988), cert. denied, 489 U.S. 1088, 109 S. Ct. 1552, 103 L. Ed. 2d 855 (1989); see also *State* v. *Cates,* 202 Conn. 615, 626, 522 A.2d 788 (1987) (state need not prove that the crime charged occurred on the precise date alleged in the information). This is true even when the defendant asserts an alibi for the date of the alleged offense designated "on or about" in the information. *United States* v. *Leibowitz,* supra.

" ' "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States* v. *Tucker,* 262 F. Sup. 305, 308 (S.D.N.Y. 1966). A bill of particulars should fulfill this

function "when the indictment itself is too vague and indefinite for such purposes." *United States* v. *Haskins,* 345 F.2d 111, 114 (6th Cir. 1965) . . . .' *[United States* v. *Addonizio,* 451 F.2d 49, 63–64 (3d Cir. 1971), cert. denied, 405 U.S. 936, 92 S. Ct. 949, 30 L. Ed. 2d 812 (1972)]." *United States* v. *Weingartner,* 485 F. Sup. 1167, 1183–84 (D.N.J. 1979), appeal dismissed, 642 F.2d 445 (3d Cir. 1981). The state must inform the defendant, within reasonable limits, when the crime charged occurred. *State* v. *Laracuente,* supra, 519. The state is not obligated, however, to provide the defendant with a precise date when none is available. Id. We are mindful that the nature of the crime of bribery is such that it may be difficult for the state to respond to a motion for a bill of particulars with an exact date because the offense may occur subtly over a period of time. *Commonwealth* v. *Iacovelli,* 9 Mass. App. 694, 698, 403 N.E.2d 1204 (1980).

The bill of particulars, in this case, alleging that the offense occurred on or about June 14, 1985, satisfied the requisite standards because it gave the defendant enough information to enable him to prepare his defense. Practice Book § 832; *Bruffet* v. *State,* 205 Kan. 863, 864, 472 P.2d 206 (1970), cert. denied, 400 U.S. 1010, 91 S. Ct. 571, 27 L. Ed. 2d 624 (1971). The state was not required to specify a more precise date either of the commission of the offense or of the defendant's receipt of the money from Gahan. Because the bill of particulars limits the state to proving that the defendant committed the offense in substantially the manner described, we do not require the state to limit the date in the information more narrowly than the evidence available warrants, even if the defendant attempts to assert an alibi defense. *State* v. *Blasius,* 211 Conn. 455, 461, 559 A.2d 1116 (1989); *State* v. *Laracuente,* supra, 520. An alibi claim is a factual question that should be

left to the jury once all of the evidence has been presented. *State* v. *Evans,* 205 Conn. 528, 535, 534 A.2d 1159 (1987), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988).

The defendant argues that he was prejudiced by the amended information, because the state did not object to the trial court's ruling restricting the dates that it could attempt to prove the defendant received the money, and in reliance upon the court's ruling, the defendant disclosed that he had been in Alaska in June, 1985. While the defendant is correct when he asserts that the state agreed that the court could reasonably have concluded that "on or about June 14, 1985," meant June 14, 15, 16 or 17, there is nothing in the record to suggest that the state agreed that the defendant actually received the money on those dates.[13] Faced

[13] On September 27, 1988, the following colloquy took place before the court:

"Mr. Santos [Defense counsel]: Instead of giving me the date the offense occurred, they give me the approximate date the offense occurred. . . . So I'm simply asking the Court to order them to give me the date, not the approximate date because then we're going to get into all kinds of things in the charge on this later on. They know the date. Our Supreme Court has said a number of times they are not going to require the state to give the date if they don't know the date, *but in the affidavit they quote the date that Mr. Hill gives the money, presumably, to Mr. Gahan. So I'd like that.* I'd like to know the date.

[The state then argued that its bill of particulars was adequate, it complied with the law, the defense has suffered no hardship and therefore the state need not be more specific.]

"Ms. Krinitsky [The state]: I see no reason to confine the charge or the document to a certain time period. . . .

"Mr. Santos: Now, if the state doesn't know, the courts have said, well, we're not going to require the state to provide something they don't know, but if the state knows, then most certainly it's within the court's discretion to order him to tell me. . . .

"The Court: The representation made by the state though, is that June 14, on or about, means within a relatively short time *because they don't want to get locked in on time* . . . .

"Ms. Krinitsky: It's obviously up to the Court, but I cannot imagine why the state should be bound when the case law clearly sets the standard and the state has met that standard. . . .

with this ambiguity, we will not bind the state to an agreement it did not make. We hold that the trial court abused its discretion when it ordered the state to prove at trial that the defendant received the bribe proceeds on the dates specified by the defendant and the trial court.

"The Court: On or about June 14 means, to this Court, close to June 14. I'm talking about close. I'm not talking about a month away. So on or about June 14, based on the arrest affidavit, means on or about June 14, 1985 to this Court." (Emphasis added.)

On October 21, 1988, the following colloquy occurred:

"Mr. Santos: And as I understand this information, on or about the 14th of June means, according to what the Court last ruled, within two to three days of that date because the state continues not to make this date specific. Am I correct, your Honor? That is what I believe you said and we had this debate. . . .

"Well, the affidavit, your Honor, is pretty clear because we have—they have a cancelled check from Mr. Hills [sic] that he cashed the check that allegedly were the funds that led to this bribe on June 14th. They have the stamp on the check, the bank statement. So am I assuming we're talking about the 14th, the 15th, the 16th or the 17th? Can someone tell me that?

"Mr. Whelan [The state]: I think the information speaks for itself. On or about is on or about.

"Mr. Santos: My understanding, it's two to three days that the affidavit shows that the check has its cancelled stamp on it, the 14th of June. So I assume [that] June 14th means the 14th, the 15th, the 16th or the 17th and we've been debating this from day one. The affidavit says the crime occurred on June 14th.

"The Court: Well, I think the words 'on or about the 14th day of June' complies with your interpretation of it, Mr. Santos. As I understand the long form information.

"Ms. Luchansky [The state]: Correct, your Honor."

On October 28, 1988, the defendant again attempted to pinpoint a date "[o]f the transfer of consideration, not any agreement that might have taken place." The state again asserted that its bill of particulars was sufficient when it alleged on or about June 14, 1985.

"Mr. Santos: I asked them the date of the offense. They said on or about June 14th.

"The Court: The date of the offense being the transfer of consideration.

"Mr. Santos: The bribery—the crime.

"The Court: Of the transfer of consideration, not any agreement that might have taken place. All right.

"Mr. Santos: The date—yeah, the date—

"The Court: I think that's clear, counsel. Do you agree?

We turn therefore to the issue of whether the trial court erred when it struck the amended information alleging that the date the offense occurred was "on or about the month of June, 1985, or sometime thereafter, but before January 1, 1986." This court has repeatedly recognized that the state may amend an information to correct the alleged time of the commission of the offense when time is not a material element of the crime charged. *State* v. *Ramos,* 176 Conn. 275, 277, 407 A.2d 952 (1978). Pursuant to Practice Book § 623, it is within the trial court's discretion to strike an amended information *if* the substantive rights of the defendant would be prejudiced.[14]

Here, the defendant has failed to show how he would be prejudiced by an amendment to the information at

---

"Mr. Whelan: Well, your Honor, I don't agree because down through the ages long-form informations have always read on or about such-and-such a date, and the Supreme Court has upheld the writing of long-form informations as such. . . .

"Mr. Santos: Mr. Bergin was given the money on the 14th, the 15th, the 16th or the 17th, 1985. As far as the agreement is concerned, they can show other dates.

"The Court: All right.

"Mr. Santos: Is that—is that correct?

"The Court: I think—I think that's correct.

"Mr. Santos: And that's going to be what we're trying this case about?

"The Court: That I agree with you on."

The transcript does not reflect any agreement by the state that the defendant received any money on those specific dates.

While the state concedes that it believes that the defendant received the money shortly after June 14, 1985, it asserts that it cannot specify a more precise date because Gahan cannot recall the exact date he gave the envelope to the defendant.

[14] "[Practice Book] Sec. 623.— —SUBSTANTIVE AMENDMENT BEFORE TRIAL

"If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced."

this stage of the proceedings. Since time is not a material element of the crime of bribe receiving, see Part II of this opinion, it is of no consequence when the defendant received the money. The trial court's sanction of the defendant's attempt to limit the date on which the defendant received the money cannot transform time into a material element of the crime charged. The facts alleged in the affidavit are sufficient to establish that Gahan, either wittingly or unwittingly, acted on behalf of the defendant. Thus, the defendant's absence from Connecticut in June is immaterial and his disclosure of that information is irrelevant. In this case the state has filed its amended information so far in advance of trial that it is impossible to discern how the defendant would be prejudiced at trial by the change. Absent some further showing that the substantive rights of the defendant would be prejudiced, the state was entitled to amend the information.[15]

There is error, the judgment is set aside and the case is remanded to the trial court with direction to reinstate the amended information containing the bribe receiving count against the defendant.

In this opinion PETERS, C. J., and SHEA, J., concurred.

---

[15] Even if the transcript can somehow be interpreted to indicate that the state agreed that the defendant received the envelope on June 14, 15, 16 or 17, 1985, we are unpersuaded by the defendant's arguments. The state immediately attempted to rectify any misunderstanding that may have occurred by filing an amended information and bill of particulars. The defendant is not prejudiced when the state proves that the alleged offense occurred on a date other than that specified in the original information. *State* v. *Cates*, 202 Conn. 615, 626, 522 A.2d 788 (1987). This is true even if the defendant asserts an alibi for the date in the original information, when time is not a material element of the crime charged. *United States* v. *Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988). Any potential prejudice would be mitigated by the state's amended information, filed well in advance of trial, clarifying its position as to the date of the offense. Because the defendant was not prejudiced by the amendment, the trial court erred when it struck the amended information.

ARTHUR H. HEALEY, J., with whom COVELLO, J., joins, dissenting. I respectfully dissent from the majority's disposition of the defendant's claim that this court does not have subject matter jurisdiction over this appeal. It is my opinion that this issue must be resolved in favor of the defendant because the trial court's order denying with prejudice the state's request to appeal is governed by the majority decision in *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 521 A.2d 1017 (1987).

The record before us clearly requires that we examine the threshold question of our jurisdiction to entertain this appeal and to dismiss it if we lack subject matter jurisdiction. Id., 301–302 n.2; *State* v. *Phillips*, 166 Conn. 642, 644, 353 A.2d 706 (1974).

General Statutes § 54-96 provides that the state "may" appeal "all questions of law" in a criminal case "with the permission of the presiding judge." It bears repeating that "[t]he statutory language unmistakably confers upon the trial court the choice of granting or withholding the appeal privilege depending upon the circumstances of each case. It is apparent from the permissive language of the statute that the legislature did not intend that permission to appeal be granted in every case in which it is sought." *State* v. *S & R Sanitation Services, Inc.*, supra, 308. "[A]s the dominant intention of the legislature [in enacting § 54-96] was to extend the right of appeal to the state, the limitation [of requiring permission of the presiding judge] placed upon that right is one which must be so exercised as to avoid abuse and unreasonable consequences." *State* v. *Avcollie*, 174 Conn. 100, 110, 384 A.2d 315 (1977). This is so because, without the granting of the requisite permission by the presiding judge, there is no viable appeal unless the court's denial of permission is " 'so unreasonable as to constitute an abuse of discretion.' " Id.; see *State* v. *S & R Sanitation Services, Inc.*, supra.

There can be no question but that this court has the general supervisory power to protect its jurisdiction to hear appeals and that this power cannot be defeated by the arbitrary action of a trial court. *State* v. *S & R Sanitation Services, Inc.,* supra, 309–10. As in *S & R Sanitation Services, Inc.,* the jurisdictional predicate for this appeal under § 54-96 exists only if the trial court abused its discretion in denying the state's motion for permission to appeal. Id., 310.

In setting out its version of the trial court's "rationale" for denying the state permission to appeal, the majority states that that "rationale" was "that the state was seeking to appeal questions of fact rather than questions of law." The majority maintains that "[t]he underlying premise of the trial court's reasoning is unsound" because "[t]he issues raised by the state are not purely factual but also involve questions of law." The trial court's memorandum of decision in which it denied the state's request for permission to appeal acknowledged that the provisions of § 54-96 allowed the state to appeal "upon all questions of law" with permission. The trial court pointed out that in the "extensive memorandum" filed by the state in support of that request, "the State has based the substance of its attack on the *factual* findings made by this Court."[1] (Emphasis in original.) It then observed that the state contested the following: "(1) This court's determination, in view of the facts surrounding the preparation of the affidavit and the procedural history, that the date of the alleged bribe is a material element under the facts of this case; (2) The finding by this court that omissions concerning the defendant's absence and omissions concerning the admissions of intent of certain interested persons were material to the question of bribe receiv-

---

[1] A fair reading of this extensive memorandum makes apparent the state's very extensive attack on the factual findings of the trial court.

ing; (3) This court's finding that when the affidavit is reviewed with the omitted material inserted, that probable cause to believe the defendant received a bribe on or about June 14, 1985 is defeated."

It should not be overlooked that in its earlier twelve page memorandum granting the dismissal with prejudice the trial court found the "deliberate misrepresentations and reckless omissions on the part of the affiant to be the defects inherent in the initiation of the prosecution for which [Practice Book §] 815 (1) was designed."[2] The trial court, invoking not only Practice Book § 815 (1) but also the inherent supervisory power of the court, found that the institution of the prosecution was defective and proceeded to enter the dismissal with prejudice. I do not read the majority opinion (1) as suggesting that § 815 (1) proscribes the dismissal of a prosecution "prior to trial" even where *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), is involved, or (2) that a trial court lacks, in a proper case, inherent supervisory power to dismiss a prosecution. I do want to be clear and point out that I fully agree that pretrial dismissal of charges is not a matter to be done lightly. By the same token, our practice does provide for such dismissals prior to trial in a proper case. See Practice Book § 815 (1).

The majority concludes that the trial court abused its discretion in denying the state permission to appeal. I do not agree. We have said that "[d]iscretion . . .

---

[2] Practice Book § 815 (1), entitled "[Motion to Dismiss]—Matters to be Raised," provides: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information:

"(1) Defects in the institution of the prosecution including any grand jury proceedings."

It appears, therefore, that a "prosecution" may be amenable to dismissal under this section even where a trial has not been started. See *State* v. *Talton,* 209 Conn. 133, 139, 547 A.2d 543 (1988).

imports something more than leeway in decision-making. See *State* v. *Battle,* 170 Conn. 469, 365 A.2d 1100 [1976]; *State* v. *Gilligan,* 92 Conn. 526, 103 A. 649 [1918]; McCormick, Evidence (2d Ed.) § 190. ' "Discretion means 'a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . .' " ' " *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d 560 (1979). In *S & R Sanitation Services, Inc.,* we observed that "[i]nherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. Discretion could generically be said to apply to issues which do not yield a fundamentally empirical yes or no answer. The very core consideration of choice in discretion logically means that neither party is absolutely entitled to have that discretion exercised in its favor." *State* v. *S & R Sanitation Services, Inc.,* supra, 311. Because discretion obviously involves some independence of judgment, there can be no hard and fast rule or absolute criterion governing it in all cases, because such a rule would be the end of discretion. See *Bringhurst* v. *Harkins,* 32 Del. 324, 331, 122 A. 783 (1923). Discretion is, "in a legal sense, abused when the court exceeds the bounds of reason, all the circumstances before it being considered. An exercise of discretion may be erroneous but still be legal and free from abuse." Id. In exercising discretion, however, the "right to be wrong without incurring reversal" is not absolute. M. Rosenberg, "Judicial Discretion of the Trial Court, Viewed from Above," 22 Syracuse L. Rev. 635, 637 (1971).

It is because of this leeway in deciding or this "some independence of judgment" in making decisions that permeates the exercise of discretion which has given rise to the presumption that "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in

favor of its correctness; the ultimate issue is whether the court could reasonably conclude as it did . . . ." *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979); *Rokus* v. *Bridgeport,* 191 Conn. 62, 72, 463 A.2d 252 (1983); W. Maltbie, Conn. App. Proc. § 59. This "great weight" and "every reasonable presumption . . . in favor of its correctness" should be more than bland rhetoric. Moreover, an appellate court determination of whether a trial court has abused its discretion does not, and should not, depend upon whether it would have reached the same conclusion. *State* v. *S & R Sanitation Services, Inc.,* supra, 311–12, and cases there cited.

In categorically denouncing as "unsound" the underlying premises of the trial court's reasoning, the majority is careful to say that "[t]he issues *raised* by the state are not *purely factual* but also *involve questions of law.*" (Emphasis added.) It goes on to say that our case law provides abundant authority that all of the issues that the trial court deemed were precluded from review present questions "that we can and will consider." This "not purely factual" label, I view as a subliminal concession that perhaps the majority's broad brush in sweeping away the trial court's "considered reasons" for denying the right to appeal is not as unquestionable as one might first think. I understand that there is no litmus test that totally distinguishes those matters that are "factual" from those that are "legal" or those that are of "mixed law and fact." While at opposite ends of the spectrum, it is perhaps quite easy to separate issues of fact and law; the more difficult area is where facts and the application of a legal rule to facts tend to blend. This is where judging facts in terms of their legal consequences and applying law to facts approach a process of fusion where what is a question of law and what is a question of fact is provoca-

tively puzzling. This can be especially true here where fact-sensitive issues tend to predominate.

No one can argue that there are cases when facts may assume infinite variety, yet applicable legal rules are stated in a fashion calling for the application of judgment. The abstract denomination of disputed issues as "factual," "legal" or "mixed law and fact" is not fairly dispositive of their amenability to appellate review where the type of issue it is may turn upon the application of legal criteria in determining whether a fact is material. Even if it were dispositive on an issue of abuse of discretion, the concept of choice inherent in discretion, the great weight deference, the every reasonable presumption of correctness and the like cannot be eliminated in arriving at a conclusion on the exercise of discretion. This is especially so when the issues are designated as issues of mixed law and fact. Judicial characterization of what constitutes issues of mixed law and fact has produced a source of disagreement even among members of the United States Supreme Court.[3] The United States Supreme Court has said: "Nor do we yet know of any other rule or principle that will unerringly distinguish a factual finding from a legal conclusion." *Pullman-Standard* v. *Swint*, 456 U.S. 273, 288, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982).

---

[3] For example, in *Maggio* v. *Fulford*, 462 U.S. 111, 117, 103 S. Ct. 2261, 76 L. Ed. 2d 794, reh. denied, 463 U.S. 1236, 104 S. Ct. 29, 77 L. Ed. 2d 1451 (1983), the majority concluded that the question of an accused's competence to stand trial in a state court was a factual question to be resolved by a court whose findings could only be overturned in a federal habeas corpus proceeding if they were not " 'fairly supported by the record.' " Justice White concurring, Justices Brennan and Marshall concurring in part with Justice White, and Justice Stevens in dissent, asserted that the question was one of mixed law and fact. Id., 118–21. Again, in *Patton* v. *Yount*, 467 U.S. 1025, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984), decided the following term, there was a similar dispute as to the status of a state trial court's ruling on whether a prospective juror had a preconceived opinion that disqualified him from serving on the jury.

It is because discretion is not governed by an absolute standard that the application upon review of all of the factors referred to above in evaluating its exercise leads me to disagree with the majority's resolution of the subject matter jurisdiction issue. The trial court in this case gave "considered reasons" for its denial of permission to appeal. In *S & R Sanitation Services, Inc.,* "we weigh[ed] heavily" the fact that the trial court, unlike that in *Avcollie,* did give "considered reasons." Each considered reason given here should likewise be weighed heavily. The first such reason given by the trial court and attacked by the state was its "determination, in view of the facts surrounding the preparation of the affidavit . . . that the date of the alleged bribe is a material element under the facts of this case." The majority states this reason as "whether the date of the alleged bribe is a material element of the crime charged." I do not read this as stating what the trial court really meant. I agree that time is not an essential element of the crime charged. That is clearly not what the trial court meant; rather, it said that, in view of the facts it found, the date was "a material element under the facts of this case."

The trial court's memorandum granting the motion to dismiss clearly uses the word "material" and uses that term in the evidentiary sense that facts found are "material" where offered to prove a matter in issue and it thus relates to the crime charged by having a legitimate influence or bearing on the decision to be made. See 22A C.J.S., Criminal Law § 749. Stated another way, to be "material," the fact offered, if found or proven, must be significant under the substantive law applicable to the case and be properly at issue. This is no quibble or technicality and even if it might be so argued, the United States Supreme Court has said that "lawyers know, if others do not, that what may seem technical may embody a great tradition of justice

. . . ." *Kotteakos* v. *United States,* 328 U.S. 750, 761, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946).

The trial court, after reviewing documentary evidence, including depositions and affidavits, encompassing matters that went to the defendant's claim of alibi (the Alaska trip), made certain findings of fact upon which it determined that the time of the charged offense was "material." I submit that to do so represents an informed choice by the trial court between options open to it that was based on reasonable factual foundation and supported in law. We have indicated that the date of an offense may become "material" where a defense of alibi is made. See *State* v. *Horton,* 132 Conn. 276, 277, 43 A.2d 744 (1945). I perceive no reason for rejecting this legitimate "considered reason" after applying all the legal components referred to above in determining whether an abuse of discretion occurred.[4] This reason alone legitimately serves as a basis to uphold the denial of permission to appeal as no abuse of discretion should be found on this ground. See *State* v. *Avcollie,* supra, 111 ("no considered reason" given).

The next reason attacked by the state that is upheld by the majority is the trial court's finding "that omissions concerning the defendant's absence and omissions concerning the admissions of intent of certain interested persons were material to the question of bribe receiving." In its memorandum dismissing the information, the trial court found that the affiant had

---

[4] Because of my view on this ground, it follows that I do not agree with the majority that the trial court abused its discretion "when it ordered the state to prove at trial that the defendant received the bribe proceeds on the dates specified by the defendant and the trial court." This has to do with the amended information and bill of particulars that the transcript file shows was fully argued after which the trial court ordered the state limited to certain dates.

"deliberately omitted evidence and testimony from the warrant affidavit that [was] material to the finding of probable cause." It then made seven specific findings of fact which it concluded were "intentionally" omitted from the affidavit when presented to the issuing judge and which it also said should have been included. Finally, it said that had the "omitted facts" been inserted in the affidavit, "probable cause could not have been found."

We have said that, although *Franks* v. *Delaware, supra,* mentioned only " 'false statements . . . included . . . in the warrant affidavit,' material omissions from such an affidavit also fall within the rule if the defendant proves that the omissions were knowingly and intentionally made, or were made with reckless disregard for the accuracy of the affidavit." *State* v. *Stepney,* 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). The trial court made the necessary findings indicated in *Stepney.*[5] The question of whether an affiant intentionally misrepresents facts in an affidavit is a question of fact for the trial court. *State* v. *Chaisson,* 123 N.H. 17, 458 A.2d 95 (1983).

The majority, without any discussion of several of these facts that were found material, however, does discuss the defendant's Alaskan trip. Referring to it, they say that this "omission would be material . . .

---

[5] I agree with the majority that "[n]ot all omissions, even if intentional, will invalidate an affidavit," for which they cite *People* v. *Stewart,* 105 Ill. 2d 22, 43, 473 N.E.2d 840 (1984), cert. denied, 471 U.S. 1131, 105 S. Ct. 2666, 86 L. Ed. 2d 283 (1985). An examination of that case, however, discloses that the statements the defendant claimed in a *Franks* hearing should have been included in the affidavit "were so fraught with inconsistencies that it was not unreasonable for the police to conclude that the information was unreliable." *People* v. *Stewart, supra,* 45. There is no suggestion that this is so concerning the facts found material by the trial court in this case.

only if the date the defendant received the money from Gahan is a material element[6] of the crime . . ." and then conducts its analysis from there. Again, I repeat that I agree that the date of the crime charged is not *an element* of that crime; we are, however, concerned here with omissions of material facts, not a material element of a crime.

"An affidavit may be as inaccurate when it omits facts as when it misstates them. The crucial, inference-drawing powers of the magistrate may be equally hindered in either case, with identical consequences [to the defendant]." *People* v. *Kurland,* 28 Cal. 3d 376, 384, 618 P.2d 213, 168 Cal. Rptr. 667 (1980). Under *Kurland,* if a fact is recklessly omitted or omitted with an intent to mislead, the warrant should be quashed, regardless of whether the omission is material. Id., 390. The findings by the trial court in this case as to the nature of the omissions when the affidavit was presented to the magistrate raise the issue of whether those omissions significantly distorted the magistrate's probable cause analysis. This was a call within the trial court's discretion for which it gave a "considered reason," as well as law upon which to base the choice it made. Where the trial court made findings of fact that it found were

---

[6] The terms "material element" and "material" have apparently been the source of confusion here. No authority is cited for what constitutes a "material element" of a crime as opposed to an "element." The point is that the trial court did not say time was a "material element" of the crime involved, but that time may become "material under the facts of this case" where the defense of alibi is involved.

I would add the following portions of the affidavit to those set out in the majority opinion: *"On or about June 14, 1985,* $3,000 in cash was paid to Thomas Gahan. . . . Mr. Gahan stated that the older Hill give him an envelope . . . that he *then* turned over . . . to the Mayor . . . ." (Emphasis added.) Reasonably viewed, this lends support to the trial court's ruling that "on or about June 14, 1985," in the bill of particulars, meant that the defendant received the money on "June 14, 15, 16 or 17, 1985," thus justifying the characterization by the trial court of the omission of the period of the defendant's Alaskan trip from the affidavit as a "material" omission.

"deliberately" or "intentionally" omitted, such findings are not at all inconsistent with being treated as questions of fact, not of law, and not of mixed law and fact. See, e.g., *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546, 391 A.2d 170 (1978); *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543, 102 A.2d 366 (1953).

In distinguishing questions of fact from questions of law, it has been said that "clearly, an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question. See *Dayton Board of Education* v. *Brinkman,* 443 U.S. 526, 534, [99 S. Ct. 2971, 61 L. Ed. 2d 720] (1979)." *Miller* v. *Fenton,* 474 U.S. 104, 113, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985). In this issue on this case, the "ultimate" constitutional question is the fourth amendment question involving the warrant affidavit. It is certainly not unreasonable, again applying all the components that go into deciding whether discretion was or was not abused, for the trial court to consider not only that the crucial, inference-drawing power of the magistrate could have been hindered but that probable cause was defeated.[7] If there is no absolute standard in judging the exercise of discretion, I have difficulty understanding how an appellate court, with the choice open here to the trial court, which it exercised on the basis of cognizable legal authority, can conclude that its discretion was abused.

---

[7] In its citation of authority, the majority notes that "even if the affiant 'picks and chooses' the information that he includes in the affidavit, there is no *Franks* violation if, had the magistrate been so advised, he still would have been justified in issuing the warrant." It is clear from the seven material facts found by the trial court touching on this issue that none was included in the affidavit. I do not understand the majority to suggest that the issuing magistrate was told anything except that which he learned from examining the documents presented to him and including specifically the affidavit.

The last reason given by the trial court was that "when the affidavit is reviewed with the omitted material inserted, that probable cause to believe that the defendant received a bribe on or about June 14, 1985, is defeated." I believe that this, too, constitutes a "considered reason" for the trial court's action when the principles guiding the trial court's discretion are applied; here again, its action was within the range of the choices open to it. In so concluding, I must assume, of course, the inclusion of those facts the trial court deemed material. In my view, it is suggestive of prescient reasoning for the majority to conclude that once the omitted facts deemed material by the trial court are included, that it was an abuse of discretion by the trial court to declare that a detached magistrate would not find probable cause. The trial court's determination denying the state's motion to appeal is not terse, it is not untenable; it is spelled out in its memorandum and is a reasonable conclusion reached between the choices that were open to it. This does not constitute being "unreasonable" in the sense it is "irrational," nor is it "arbitrary" in the sense of being "without adequate determining principle." See *State* v. *S & R Sanitation Services, Inc.*, supra, 312. As one court said: "Where there is room for two opinions . . . action taken after due consideration is not arbitrary or capricious even though a reviewing court may believe it to be erroneous." *Abbenhaus* v. *Yakima*, 89 Wash. 2d 855, 858–59, 576 P.2d 888 (1978), quoted in *State* v. *S & R Sanitation Services, Inc.*, supra.

In sum, I would note the following. The majority does not contend that the trial court lacked the inherent supervisory authority that the trial court claimed it possessed. I must assume, however, that the majority, sub silentio, has found it improperly invoked because of its finding of abuse of discretion. Even if, however, it could be said arguendo that there were some error in the deci-

sion denying the state's request to appeal, the very concept of discretion which may fairly countenance some imperfection does not then cause the action of the trial court to be the "clear and extreme abuse of discretion" that we found in *State* v. *Avcollie,* supra, 111, or a case "where injustice appears to have been done" as we said in *Avcollie.* Id.; see *State* v. *S & R Sanitation Services, Inc.,* supra. We are in the area of discretion, not discretion arbitrarily appropriated by the trial court to itself, but discretion granted to every trial judge by the legislature when it enacted General Statutes § 54-96. The nature of the exercise of discretion is such that there is just no one right answer when reviewing its exercise. Otherwise, what is the basis for according discretion to trial judges? "Discretion without a criterion for its exercise is [the] authorization of arbitrariness." *Brown* v. *Allen,* 344 U.S. 443, 496, 73 S. Ct. 397, 97 L. Ed. 469, reh. denied, 395 U.S. 946, 73 S. Ct. 827, 97 L. Ed. 1370 (1953). We have such criteria, which, when appropriately applied, lead to the conclusion that there was no abuse of discretion. Accordingly, I would affirm the trial court's granting of dismissal with prejudice and conclude that we do not have subject matter jurisdiction.

Therefore, I respectfully dissent.